ARTHUR H. EVANS, Appellant, *vs.* THE CHICAGO TITLE AND TRUST COMPANY, Admr., *et al.* Appellees.

*Opinion filed April 24, 1925.*

1. REGISTRATION OF TITLE—*judgment does not become lien on registered land unless certificate is filed.* A judgment by confession and execution thereon, the certificate of levy and the certificate of sale, do not in any way affect the title to registered land or constitute any lien upon the premises unless the certificates and a certificate of the judgment are filed with the registrar and memorials of said proceedings are entered upon the register of the last certificate of title, as provided in sections 85, 87, 88 and 90 of the Torrens law, and unless such provisions are observed the registrar is not authorized to transfer title under the judgment.

2. EQUITY—*equity will permit judgment debtor to set aside void sheriff's deed—Torrens law.* The doctrine that a court of equity will not interfere simply to permit a judgment debtor to defend against a just debt or claim to which he has no defense is not applicable where the debtor does not seek to have the judgment against him set aside or to defend against the claim on which it is founded but merely seeks to set aside a sheriff's deed and pro-

ceedings therefor, which are void because of failure to file with the registrar certificates of the proceedings and to enter memorials upon the register of the last certificate of title, as required by the Torrens law.

3. CONSTITUTIONAL LAW—*legislature may regulate tenure and transfer of land.* So long as vested rights are not disturbed the legislature has the power to regulate the tenure of land within the limits of the State, the conditions under which it may be alienated, the modes of its acquisition and transfer, and the rules of evidence by which the title is to be determined.

4. SAME—*force and effect of judgment may be differentiated according to classes of property affected.* Differences in the force and effect of judgments and the proceedings for their collection, according to the character of the property to be affected, are not within the rule of uniformity laid down in section 29 of article 6 of the constitution, as said rule is directed against differences in judgments and proceedings of courts of the same character, and requires that all judgments and proceedings in such courts, and in causes of action of the same kind against persons or property under the same conditions, must be the same.

5. SAME—*judgment lien provisions of Torrens law do not violate section 29 of article 6 of constitution.* The provisions of the Torrens law as to when a judgment is a lien on registered land do not violate section 29 of article 6 of the constitution, requiring that all laws relating to courts and the force and effect of judgments and decrees shall be uniform, as the classification of registered and unregistered land is provided in a general and uniform law and forms a sufficient basis for a difference in the proceedings necessary to make a judgment a lien on land.

APPEAL from the Circuit Court of Cook county; the Hon. GEORGE FRED RUSH, Judge, presiding.

WYMAN, HOPKINS, McKEEVER & COLBERT, (MARY LEE COLBERT, and CHARLES H. PEASE, of counsel,) for appellant.

ERNEST W. CLARK, (CHARLES S. CUTTING, of counsel,) for appellee the Chicago Title and Trust Company.

J. SCOTT MATTHEWS, for appellee Joseph F. Haas.

WALTER D. HERRICK, JOHN LYLE VETTE, WALTER F. DODD, and ELMER J. SCHNACKENBERG, for *amici curiæ.*

Mr. JUSTICE DUNN delivered the opinion of the court:

Arthur H. Evans filed an amended and supplemental intervening petition in the circuit court of Cook county, alleging that on January 29, 1914, certain real estate in Cook county was registered in his name and the certificate of title was issued to him, and that he has not executed any conveyance or incumbrance of the premises and is still the real owner thereof; that afterward, shortly prior to November 13, 1916, the Chicago Title and Trust Company, as administrator of the estate of Josef Tuma, deceased, without notice to the petitioner, obtained a judgment against him by confession in the circuit court of Cook county, which was rendered before the maturity of the note upon which it was entered and before any default in the payment of principal or interest; that no certificate or transcript of said judgment was filed in the office of the registrar until February 9, 1920; that on April 10, 1917, the sheriff of Cook county made a sale of the premises to the Chicago Title and Trust Company, as administrator of the estate of Josef Tuma, under an execution issued on the judgment, but no certificate of levy was filed in the office of the registrar, nor was any certificate of the sale filed in the office of the registrar until February 9, 1920, after the expiration of the period of redemption; that on that day a transcript of the judgment and a sheriff's certificate of the sale were filed in the office of the registrar, and on or about December 9, 1921, the sheriff of Cook county made a pretended deed of conveyance of the premises to the Chicago Title and Trust Company, as administrator of the estate of Josef Tuma, pursuant to the execution sale, which was filed in the registrar's office on March 30, 1922; that the books in the office of the registrar show that a certificate of title dated March 30, 1922, was issued to the Chicago Title and Trust

Company, as administrator of the estate of Josef Tuma, purporting to show the title to the premises vested in such administrator, but the petitioner is informed and believes, and states the fact to be, that the registrar refused to transfer the title to the Chicago Title and Trust Company as administrator, and on August 21, 1922, no certificate of title had been issued to it and the title had not been transferred to the administrator; that all of the proceedings were without notice to petitioner and without complying with the requirements of the statute with reference to real estate registered under the Torrens act, and by reason of the premises neither the judgment nor execution became a lien upon the premises, the sale thereof by the sheriff was void, the purchaser at the sale and grantee in the deed obtained no right, title or interest in the premises, and the transcript of judgment, certificate of sale and sheriff's deed should be stricken from the files, the memorials thereof expunged from the records, the title to the premises confirmed in the petitioner and proper certificate issued to him therefor. It was further averred that the petitioner had caused demands to be made upon the registrar for the cancellation of the supposed certificate of title purporting to have been issued to the Chicago Title and Trust Company as administrator and the expunging of the memorial thereof showing title in the petitioner, but the registrar has wholly refused and still refuses to comply with such demand; that on or prior to August 21, 1922, the Chicago Title and Trust Company, as administrator, entered into negotiations with Frank Jana for the sale of the real estate to him, and informed him that the administrator had not yet obtained any certificate of title and the registrar had up to that time refused to issue such certificate, for the reason, among others, that the sheriff's sale, certificate and deed were void, and accordingly an agreement was entered into between the administrator and Jana whereby Jana agreed to purchase the premises and to pay $700 for them upon condition that the

administrator should obtain a certificate of title issued to it by the registrar, but that if the administrator should be unable to secure such certificate of title then Jana should pay $600 for such title, if any, as said administrator had in the premises; that on August 22, 1922, an order was entered in the probate court of Cook county authorizing the administrator to enter into this contract, and on April 12, 1923, a deed was filed in the office of the registrar, dated December 20, 1922, from the Chicago Title and Trust Company, as administrator of the estate of Josef Tuma, purporting to convey to Jana, for the consideration of $600, the premises, and the registrar is about to issue to Jana a certificate of title, and will do so unless restrained by the order of the court; that Jana, at the time of entering into the contract for the purchase of the premises, before making any payment on the purchase price, had notice and actual knowledge of the rights and interests of the petitioner and that the administrator did not have title to the premises, that the sheriff's sale, certificate and deed were void, and that the administrator was attempting to sell the premises for $100 less than the agreed purchase price because it could not obtain a certificate of title to the premises; that the Chicago Title and Trust Company had knowledge of all these facts, and its acts in attempting to sell and convey the premises to Jana in disregard of the petitioner's rights were fraudulent and void as to the petitioner. The Chicago Title and Trust Company, as administrator of the estate of Josef Tuma, Joseph F. Haas, registrar, and Frank Jana, were made defendants to the petition. Demurrers were filed by the defendants, which the court sustained, the petition was dismissed, and the petitioner appealed.

Section 85 of the Torrens law provides that no judgment shall be a lien upon or affect registered land, or any estate or interest therein, until a certificate under the hand and official seal of the clerk of the court in which the same is of record, stating the date and purport of the judgment,

or a certified copy of such judgment, is filed in the office of the registrar and a memorial of the same is entered upon the register of the last certificate of title. Section 86 requires that whenever registered land is levied upon by virtue of an execution, a certificate of levy shall be filed with the registrar and a memorial thereof shall be entered upon the register, and no lien shall arise by reason of the levy until such filing and entry. When any registered land is sold by virtue of any execution or judgment, section 87 requires the officer making the sale, instead of filing a duplicate of his certificate of sale in the recorder's office, to file it with the registrar, and requires the registrar to enter a memorial thereof upon the register in the same manner as other memorials. Section 88 provides that no transfer of title shall be made by the registrar in case of any sale of registered land by an officer pursuant to a judgment, decree or order of the court, except upon the surrender and cancellation of the outstanding certificate of title or upon an order of the court filed with the registrar directing such transfer. Section 90 provides that no statutory or other lien shall be deemed to affect the title to registered land until after a memorial thereof is entered upon the register, as provided in the act. The judgment by confession, the execution thereon, the certificate of the levy and the certificate of sale, under these sections did not in any way affect the title to the premises in question or constitute any lien upon them. The registrar was not authorized to make any transfer of the title, and the proceedings were all void.

The appellees contend that the petitioner is not entitled to any equitable relief because the judgment entered against him by confession was a valid judgment; that while his property has been taken and transferred to the judgment plaintiff the judgment defendant is not harmed, even supposing the procedure by which his property was taken was illegal and ineffective in a court of law, because his obligation has been satisfied, and they say that he who seeks equity

must do equity and a chancellor will not enforce mere technicalities at the sacrifice of justice.  The maxim is not applicable in this case.  It is true that a court of equity will not take away from a party a legal advantage which he has acquired without fraud as a means of securing a just debt, in favor of a party who does not deny that he owes the debt but claims only the right to defend against a claim to which he has no defense.  The appellant did not seek to have the judgment against him set aside or to defend against the claim on which it was founded.  He merely seeks to remove a cloud upon the title to his real estate by reason of a void sheriff's deed.  The judgment of the administrator will be unaffected by a decree setting aside the deed and expunging the memorial of the certificate of sale and deed.  The administrator may still proceed to collect its judgment in the manner provided by law.

The court erred in sustaining the demurrer to the petition, and its decree will be reversed and the cause remanded, with directions to overrule the demurrer.

*Reversed and remanded, with directions.*

Mr. Justice Dunn delivered the following additional opinion of the court on rehearing:

In accordance with the opinion filed at the October term, 1924, a judgment was rendered in this cause reversing the decree of the circuit court.  The appellee the Chicago Title and Trust Company filed a petition for a rehearing on the ground that sections 85, 86, 87, 88 and 90 of the Torrens law are unconstitutional, and at the December term a rehearing was allowed for the consideration of that question. In briefs of counsel both for the appellee and the appellant, and in briefs filed by leave of the court by counsel in behalf of certain friends of the court, the question has been fully argued.

The provision of the constitution alleged to be violated is contained in section 29 of article 6 and is as follows:

"All laws relating to courts shall be general, and of uniform operation; and the organization, jurisdiction, powers, proceedings and practice of all courts, of the same class or grade, so far as regulated by law, and the force and effect of the process, judgments and decrees of such courts, severally, shall be uniform." The appellee claims that the sections in question produce a lack of uniformity in the proceedings and practice of courts of the same class and grade and in the force and effect of their judgments, in violation of this provision. The particular lack of uniformity referred to is in the lien created by judgment on the real estate of judgment debtors and the proceedings and practice required to be pursued in the application of such real estate to the payment of the judgment.

The statute in regard to judgments and decrees and the manner of enforcing them provides that the judgment of a court of record shall be a lien on the real estate of the judgment debtor within the county for which the court is held for seven years from the time of its recovery, and if execution is not issued on the judgment within the year it shall cease to be a lien but that execution may issue at any time within seven years and shall become a lien from the time of its delivery to the proper officer for execution. This lien was created by statute long before the constitution of 1870 and has been continued in substantially the same form ever since. Its compliance with the requirements of the section of the constitution in regard to uniformity has never been questioned, although it might be plausibly argued that the only uniform law creating a judgment lien would be one which was uniform throughout the territory in which the process of the court for its enforcement ran, and that territory includes the whole State.

The act concerning land titles known as the Torrens law was passed in 1897 and became effective on May 1 of that year. Before that statute was adopted the law provided for the filing with the recorder of the county, and the record-

ing, of deeds, mortgages, leases, contracts and all other instruments affecting the title to land or creating liens, and the condition of the title could be ascertained only by an examination of those records. The purpose of the Torrens law was to provide a system of registration of land titles by which all instruments affecting the title should be filed and registered with one officer, who should be authorized to make a certificate of the title and show conclusively the state of the title and the person in whom it was vested, so that by a mere reference to the certificate the title to the land might be ascertained. A previous act of the legislature intended to accomplish the same purpose, passed in 1895, was held unconstitutional on the ground that it conferred judicial powers upon the registrar of titles. (*People* v. *Chase,* 165 Ill. 527.) The act here in question was attacked for the same reason and others, but it was held not subject to the objections made to it and to be a constitutional exercise of legislative power. (*People* v. *Simon,* 176 Ill. 165.) It was there held that so long as vested rights are not disturbed the legislature has the power to regulate the tenure of land within the limits of the State, the conditions under which it may be alienated, the modes of its acquisition and transfer, and the rules of evidence by which the title is to be determined. "The true theory of this act," it was said, "as we understand it, is, that all holders of vested rights shall be subjected to an adjudication in a court of competent jurisdiction, upon due notice, in order that the true state of the title may be ascertained and declared, and that thereafter the tenure of the owner, the right of transfer and incumbrance, and all rights subsequently accruing, shall be determined in accordance with the rules now prescribed." It was held that there was no reason why the transfer of real estate might not be made in the way provided by the act or why the legislature might not have chosen to make that way compulsory. It was not made compulsory, however, but it was left to the voluntary

action of owners of real estate whether their lands might be brought under the act, and it was left to the action of the voters of each county whether the act should be effective in the county. The act was adopted in Cook county and has ever since been in force in that county and a large amount of real estate has been registered under the act, but it has never been adopted, and is therefore not in force, in any other county. It is this condition which is the basis of the appellee's claim that the statute violates the constitutional provision in question. The modification of the judgment lien by the sections in question is apparent from the statement of the contents of those sections contained in the opinion first filed in this cause. The appellee's claim is, that the effect of the act is to cause the judgments of the courts of other counties than Cook to have a different force and effect from those of Cook county and the procedure for the enforcement of those judgments to be different, for the reason that the judgments of courts in all other counties except Cook are liens on all lands of the debtor in the county, while the judgments of the circuit court of Cook county are not liens on all the lands of the judgment debtor in the county but only on his lands which are not registered, and that the proceedings for collecting a judgment against registered lands must be different from those against unregistered lands.

Every judgment cannot be given the same force and effect and the proceedings for its collection cannot be the same without regard to the character of the judgment or the character of the property sought to be applied to its payment. It is not contended that the judgment lien was not uniform in its operation because it did not operate on personal property. The statute does not give a judgment lien on personal property. No lien is created on such property except by the delivery of an execution to the sheriff. Judgments have different effects in other respects also. A judgment in an action of assumpsit for the recovery of

money for the breach of a contract authorizes an execution against real or personal property. A judgment in an action on the case for the recovery of money for an assault and battery authorizes an execution not only against real and personal property but against the body of the defendant. The legislature may make distinctions in the effect of the judgment not only on account of the difference in character of the right which was the basis of the action but also on account of the different attributes of the property sought to be taken on execution. Some kinds of personal property may be taken into the physical possession of the officer having the writ of execution, and in such case the actual taking of possession is essential to a levy of the writ. Real estate cannot be so taken, and in such case the law permits a paper levy by endorsement on the writ. Some kinds of personal property cannot be taken into the possession of the officer,—such choses in action, for instance, as shares of stock in corporations,—and the statute provides for a different manner of levy in that case from a levy on personal property consisting of different kinds of chattels. These differences in the force and effect of the judgments and the proceedings for their collection are not within the constitutional requirement of uniformity. That requirement does not forbid such differences but it is directed against differences in judgments and proceedings of courts of the same character. All judgments and proceedings of courts of the same grade, in causes of action of the same kind, against persons or property under the same conditions, must be the same, and the character of the property to be affected justifies distinctions in the method of proceeding in accordance with the classes of cases or classes of property. Section 29 was not intended to prevent classification of this kind.

In *People* v. *Onahan*, 170 Ill. 449, in which the Jury Commissioners act of 1897 was claimed to be in violation of this section, the court in its opinion quoted and adopted

the following language in *Knickerbocker* v. *People,* 102 Ill.
218: "It is manifest that the introductory clause of that
section cannot be given effect according to the literal mean-
ing of the broad terms in which it is conceived. To do so
would lead to the most absurd consequences, and would
be in direct conflict with the decisions of this court. The
words are, 'all laws relating to courts shall be general and
of uniform operation.' Notwithstanding this provision the
legislature is constantly in the habit of passing special laws
fixing the commencement and the length of the terms of
particular courts, which are manifestly laws relating to
courts, and such acts, though neither uniform in their op-
eration, nor general, within the sense of the constitution,
are universally recognized as constitutional and valid. In
discussing this matter it was said in *Karnes* v. *People,* 73 Ill.
274: 'Constitutions, like all other laws, must have a rea-
sonable and practical interpretation. To give this language
a literal application would require all courts in the State
to meet on the same day and the terms to be of the same
length. This could not have been intended, because it must
have been apparent to the framers of that instrument that
such a thing could never be carried into effect.' "

Before the constitution of 1870 the legislature enacted
special laws applicable to the practice of circuit courts in
particular circuits or even applicable to the practice of the
circuit courts in particular counties, creating city courts with
such jurisdiction as was given by the particular acts, chang-
ing the jurisdiction of the circuit, county and city courts,
so that the practice of the courts in one circuit or one
county was no criterion as to the practice elsewhere in the
State. It was to abrogate special legislation of this char-
acter and to establish uniformity in the powers, proceed-
ings and practice of all the courts of the State of the same
class or grade that section 29 of article 6 of the constitu-
tion was adopted, and as soon as it was adopted the court
held it was self-executing and that all special legislation of

the character mentioned was immediately repealed. (*People* v. *Rumsey,* 64 Ill. 44; *O'Connor* v. *Leddy,* id. 299.) In other cases which have been cited, legislation to increase the jurisdiction of county courts in counties, not including all the counties in the State, or regulating the practice of the county court in certain counties, has been held invalid.

The Torrens law does not violate section 29 of article 6. It does not produce a lack of uniformity in the organization, jurisdiction, powers, proceedings and practice of the circuit courts of the State or the force and effect of their process, judgments and decrees. It simply introduces a classification of property. The law is a general law which the legislature had power to pass and does not interfere with the uniform enforcement of the process of all courts of record in the State. So far as land which has not been registered under the Torrens law is concerned, the judgments of all circuit courts in the State are liens upon all lands in the county not registered under the Torrens law. All may be made liens on land registered under the Torrens law by the same process of filing a certified copy of the judgment or a certificate of the clerk of the court in which it was rendered, stating its date and purport. The proceeding is the same whether the judgment is rendered in Cook county or any other county in the State. The appellee's only objection to this is that the Torrens law is not effective in any other county in the State than Cook and that the difference of the manner in which the title is evidenced is not a rational basis for classification with reference to the process of executing judgment. It is clear from what has been said that the classification of property for the purpose of subjecting it to the execution of judgments is justified. Since the tenure of land, the conditions of its alienation and the modes of its acquisition and transfer may be regulated by the legislature, it was a legislative question as to whether the change in the law evidenced by the Torrens law should be made. It was made by a valid

law, and the legislature in the exercise of its power decided that the new system concerning land titles required a different process for executing judgments from that prevailing under the old system. The clearly indicated intention of the legislature was to provide that the registrar's certificate of title should be conclusive evidence of the holder's title, and that for this purpose no judgment should affect registered land until a certificate or certified copy of the judgment should be filed in the office of the registrar and a memorial entered upon the register of the last certificate of title to be affected. The basis of the classification is not purely arbitrary. It arises out of the difference of the two systems of registration, the one being a registration of the various instruments affecting the title, the other the registration of the title itself. The difference in the manner in which the title is held may not be as great as the difference between personal property and real property, but we cannot say it was not sufficient to justify the legislature in accepting it as a basis for requiring different proceedings to establish the lien. If classification was proper the legislature had authority to determine upon what differences the distinction might be made between objects having some resemblance, and it is only where it is palpable that the power has been arbitrarily exercised that the courts can interfere. In our judgment the distinction between registered land and unregistered land is a reasonable basis of distinction, and the sections in question do not violate section 29 of article 6 of the constitution.

The opinion heretofore filed will therefore be re-adopted, and the decree will be reversed and the cause remanded to the circuit court, with directions to overrule the demurrer.

*Reversed and remanded, with directions.*