(No. 21264.—

CHARLES W. BALZER *et al.* Appellants, *vs.* JOHN C. PYLES *et al.* Appellees.

*Opinion filed October 22, 1932—Rehearing denied Dec. 7, 1932.*

PIERRE J. PELOQUIN, for appellants.

STEVENS, CARRIER & GRIFFITH, (MELVIN L. GRIFFITH, of counsel,) for appellees.

Mr. JUSTICE JONES delivered the opinion of the court:

On June 25, 1929, Charles W. Balzer and Frieda E. Balzer, his wife, appellants, filed an application in the circuit court of Cook county for registration of title to lot 7 in block 3 in Whipple's addition to Norwood Park, alleging the north line of lot 7 to be 135.7 feet south of and parallel to the south line of Hood avenue as then occupied, and the width of the lot to be 50 feet north and south. Appellees, John C. Pyles and Frieda Pyles, owners of lot 6, adjoining lot 7 on the north, were made defendants. They filed an answer admitting appellants are the owners of lot 7 but alleging that there is a shortage of 9.3 feet in block 3 and that lot 7 is only 49.33 feet in width. The answer also set out a decree entered on October 17, 1922, in land registration proceeding No. 12458, in the circuit court of Cook county, to which appellants' grantors, and also John C. and Frieda Pyles, were defendants. That proceeding was for the registration of lots 11, 12, 13 and 14 in block 3, and the decree found there is an actual shortage of 9.3 feet in the block as compared with the measurements from north to south shown on the plat of Whipple's subdivision, and that by operation of law such shortage should be pro-rated as to each lot in the block, that is to say, each 50-foot lot was reduced in width to 49.33 feet. The boundary lines of lots 11, 12, 13 and 14 were described by metes and bounds to accord with such shortage or correction. No appeal or writ of error from that decree was prosecuted.

Hood avenue extends east and west along the north side of block 3 in Whipple's addition, and Oconto avenue extends south from Hood avenue, on the west side of block 3. The lots on the west side of block 3 from Hood avenue south to the north line of lot 11 are, respectively, numbered 2, 3, 6, 7 and 10. Lot 10 lies between lots 7 and 11. Appellants acquired title in 1927 to lot 7 from John and Rose Kaja, who were parties to registration proceeding No. 12458. The present application asks for registration

of title to lot 7, describing it as full 50 feet wide. The examiner found in his report that in the former proceeding all the owners of lots 2, 3, 6, 7 and 10 were defendants, and that the Kajas by their answer therein claimed to own lot 7 under substantially the same metes and bounds as now claimed by appellants. He recommended that registration of lot 7, as applied for by appellants, be refused by the court, and that as a condition to any registration of their title they be required to file an amended application under a description corresponding with the decree of 1922. Appellants filed numerous objections to the examiner's report. They were overruled and on the hearing before the court the report was confirmed. Leave to file an amended application for registration was denied and a decree was entered dismissing the application for registration for want of equity. From that decree appellants have perfected an appeal to this court.

Appellants contend that lot 7 was not involved in the 1922 land registration proceeding; that such cause concerned only lots 11 to 14 in block 3; that there is no actual shortage in block 3, but the apparent shortage is because the concrete sidewalk on the south side of Hood avenue encroaches about 9.3 feet upon lots 1 and 2, the two northerly lots in block 3; that in the 1922 proceeding the court had no jurisdiction or power to re-subdivide the land or change the lot or street line; that the decree was void as to them, and that the decree in the case at bar is contrary to the evidence. On the other hand, appellees contend that the land registration proceeding of 1922 is *res judicata* as to the dimensions of lot 7 and that the present application is but an attempt to re-litigate the question.

The general purpose of the Torrens system of registration of land titles, under which this proceeding is brought, has been variously stated by courts and other authorities to be, to provide a system of registration whereby it shall be possible for an intending purchaser of land to ascertain

by an inspection of the register the condition of title and who may convey such title to him. (*In re Bickel,* 301 Ill. 484.) In a proceeding under the Torrens act all persons having or claiming any estate or interest in the land are required to be made parties to an application for registration of the title. (*Wilson* v. *Central Trust Co.* 285 Ill. 427.) The proceeding to register title is a chancery proceeding, and, except as otherwise provided by statute, is governed by the rules of chancery practice. *Amundson* v. *Glos,* 271 Ill. 209; *Troyer* v. *Erdman,* 320 id. 140.

Section 15 of the Torrens act (Cahill's Stat. 1931, chap. 30, par. 59,) provides that the application for registration may be made to any court having chancery jurisdiction in the county where the land is situated, and such court shall have power to inquire into the condition of the title to and any interest in the land and any lien or incumbrance thereon, and to make all such orders, judgments and decrees as may be necessary to determine, establish and declare the title or interest, legal or equitable, as against all persons, known or unknown, and all liens and incumbrances existing thereon, whether by law, contract, judgment, mortgage, trust deed or otherwise, and to declare the order and preference as between the same, and to remove clouds from the title. Section 25 of the same act provides that the court may find and decree in whom the title to or any interest in the land is vested, whether in the applicant or in any other person, and remove clouds upon the title, and also whether the same is subject to any lien or incumbrance, estate, trust or interest, and declare the same, and may order the registrar of titles to register such title or interest, and in case the same is subject to any lien, incumbrance, estate, trust or interest, give directions as to the manner and order in which the same shall appear upon the certificate of title to be issued by the registrar, and generally make any and all such orders and decrees as shall be according to equity in the premises and as shall be in con-

formity with the principles of the act. These sections have been construed by this court in several cases, and a wide scope of matters pertinent to the title of the property sought to be registered has been included as germane to the registration proceedings. In *Wyman* v. *Hageman,* 318 Ill. 64, it was held that, in addition to the general powers of a court of chancery, the language is sufficiently broad to authorize the court to order the restoration of a lost deed, where such deed is the basis of the title or interest, legal or equitable. An accounting was ordered between two of the parties, and the petitioner was awarded a writ of assistance for possession of the premises. (*Donnelly* v. *Dumanowski,* 329 Ill. 482.) It was held that the decree for registration should provide for reimbursement to holders of tax deeds before the title is registered. (*Cregar* v. *Spitzer,* 244 Ill. 208; *Hammond* v. *Glos,* 250 id. 32.) Whether or not a deed absolute on its face was, in fact, a mortgage, was adjudicated in a registration proceeding. (*Friend* v. *Beach,* 276 Ill. 397.) It is important, then, to determine whether or not the court in the 1922 proceeding had jurisdiction of the parties in and subject matter of that cause.

Where a block has been platted into lots and the lots have been sold, in the absence of any agreement or question of title by adverse possession a shortage in the block will be pro-rated among the several lots. Appellants, therefore, by their deed from the Kajas did not get paper title to 50 feet frontage but only received title to lot 7 after the same had been pro-rated by reason of such deficiency. (*Nilson Bros.* v. *Kahn,* 314 Ill. 275; *Westgate* v. *Ohlmacher,* 251 id. 538.) In the 1922 proceeding each lot owner in the block had an interest in the other lots therein to the extent of requiring that every lot in the block bear its *pro rata* share of any existing shortage. The adjustment and distribution of such shortage were germane to the registration proceeding, and we are of the opinion that under the statute concerning registration of land titles, and

the general powers of a court of chancery, the court was authorized to adjudicate the interests of the lot owners in the block who were parties to the proceeding and make distribution of such shortage. The court in the 1922 proceeding found there was a shortage in block 3, of which lot 7 is a part. Appellants' grantors were parties to that proceeding and were bound by the decree. Appellants took title with record notice of the distribution of the shortage under the decree of the circuit court and they are likewise bound by the decree.

If the decree in the 1922 proceeding was wrong it can not be assailed in this cause. Where the court has jurisdiction of the parties and the subject matter in controversy and enters a final order or decree which is unchallenged on review, it cannot thereafter be collaterally attacked. Jurisdiction of the subject matter is the power to adjudge concerning the general question involved, and if a bill or petition states a case belonging to the general class over which the authority of the court extends, the jurisdiction attaches and no error committed by the court can render the judgment void. If the court had jurisdiction, it is altogether immaterial, when the judgment is collaterally called in question, how grossly irregular or manifestly erroneous its proceedings may have been. The judgment cannot be regarded as a nullity, and cannot, therefore, be collaterally impeached. (*Wyman* v. *Hageman, supra; Miller* v. *Rowan,* 251 Ill. 344.) Such a judgment must be regarded as valid and binding until reversed or set aside in a direct proceeding for that purpose. *Finlen* v. *Skelly,* 310 Ill. 170.

The trial court did not err in any of the particulars complained of, and the decree is therefore affirmed.

*Decree affirmed.*