(No. 47636.—

VERNAL ECHOLS, Appellee, v. SIDNEY OLSEN, Recorder of Deeds and *ex officio* Registrar of Titles, Appellant.

*Opinion filed March 29, 1976.—Rehearing denied May 27, 1976.*

KLUCZYNSKI, UNDERWOOD, and CREBS, JJ., dissenting.

Bernard Carey, State's Attorney, of Chicago (Sheldon Gardner, Deputy State's Attorney, and Paul P. Biebel, Jr., Assistant State's Attorney, of counsel), for appellant.

John Elson, of Northwestern Legal Assistance Clinic, of Chicago (Sara Vannucci, of counsel), for appellee.

MR. CHIEF JUSTICE WARD delivered the opinion of the court:

What the facts are in this case is not in dispute. Vernal Echols, the petitioner, and her husband Valentine were joint owners of a lot in Chicago that was registered under "An Act concerning land titles" (Ill. Rev. Stat. 1973, ch. 30, pars. 45-148) (hereafter cited as the Torrens Act). On September 29, 1966, the circuit court of Cook County entered a decree of divorce in a suit that had been brought by the petitioner. Under the terms of the decree, the petitioner was required to pay her former husband $2,000 and he, in turn, was required to execute a quitclaim deed

in her favor surrendering his interest in the lot. The petitioner's attorney recorded the quitclaim deed in the office of the Cook County Recorder of Deeds on October 18, 1966, but he failed at that time to register the deed with the Cook County Registrar of Titles (Registrar).

The Independence Bank of Chicago (the Bank) obtained in 1969 an *ex parte* judgment in the amount of $1,058.67, against Valentine Echols. On January 21, 1971, the Bank had the judgment memorialized on the duplicate Torrens certificate that is maintained in the Registrar's office. As the petitioner had not registered the quit-claim deed, the duplicate certificate had shown Valentine and Vernal Echols as joint owners of the lot. On February 24, 1971, Vernal Echols filed a petition in the circuit court requesting the court to direct the Registrar to remove the Bank's memorial and to issue a new certificate showing title to be in the petitioner alone. Both the Bank and the Registrar were named as respondents. Ill. Rev. Stat. 1973, ch. 30, par. 131.

The Bank moved to dismiss the petition contending that under the Torrens Act a judgment creditor who memorializes his judgment after the judgment debtor has conveyed his interest in property acquires an interest superior to that of a prior transferee who failed to register his deed. On August 4, 1971, the court ordered the Registrar to issue a new certificate of title showing title to be in the petitioner alone but showing that her interest was subject to the Bank's registered judgment.

The petitioner filed a notice of appeal to the appellate court on September 17, 1971, but she served a copy of it only upon the Bank. The petitioner and the Bank briefed and orally argued the case and the court reversed the trial court, holding that the Bank did not acquire an interest in the property since Valentine Echols had conveyed his interest to the petitioner before the judgment was memorialized. 10 Ill. App. 3d 752, 755.

On learning of the decision, the Registrar moved the

appellate court to dismiss the appeal for failing to provide him with notice of the appeal, or, in the alternative, to have the court withdraw its opinion and to permit him to file a brief and to argue his position, which was the same as the Bank's. The court did not withdraw its opinion but it did allow the Registrar to file a brief. After oral argument on June 4, 1975, by the petitioner and the Registrar, the appellate court on June 9, 1975, announced this order:

"On our own motion we allowed a rehearing. We have again allowed oral argument and considered the briefs that were filed. We find no merit in the request we dismiss the appeal. After thoroughly reviewing the case again, we are of the opinion our original decision was correct and we so hold. It is hereby ordered the rehearing is dismissed."

We granted the Registrar's petition for leave to appeal under our Rule 315. Ill. Rev. Stat. 1973, ch. 110A, par. 315; 58 Ill.2d R. 315.

The Registrar makes two contentions here. He argues that under our Rule 303(d) (Ill. Rev. Stat. 1973, ch. 110A, par. 303(d); 58 Ill.2d R. 303(d)) if one party fails to serve a copy of its notice of appeal on an opposing party, the appeal must be dismissed. He also makes the same contention the Bank did that a memorialized interest of a judgment creditor is superior to the interest of the holder of a prior unregistered deed.

Rule 303(d) provides:

"No later than 7 days after the notice of appeal or an amendment as of right is filed in the circuit court, the party filing it shall serve, in a manner provided by Rule 11, a copy of the notice of appeal and notice of the date of filing upon every other party and upon any other person or officer entitled by law to notice of the appeal. Proof of service must be filed within 7 days after service is made, and no action shall be taken until it is filed."

However, a failure to serve a copy of a notice of appeal upon an opposing party does not deprive the court of

appeal of jurisdiction. (See 6 C. Nichols, Illinois Civil Practice, secs. 6131, 6143-47 (1975); see generally, *Francke v. Eadie,* 373 Ill. 500; *National Bank of the Republic v. Kaspar American State Bank,* 369 Ill. 34.) As our Rule 301 explicitly provides, the only jurisdictional step in appealing a final judgment of a circuit court in a civil case is the filing of the notice of appeal. Ill. Rev. Stat. 1973, ch. 110A, par. 301; 58 Ill.2d R. 301;*People ex rel. Pickerill v. New York Central R.R. Co.,* 391 Ill. 377; *People ex rel. Sandberg v. Grabs,* 373 Ill. 423.

We would note that there was no evidence of prejudice to the Registrar because of the failure to serve him. Prior to its original decision the appellate court had the benefit of the briefs and arguments of the Bank, which took a position that was similar to that of the Registrar. Further, the court granted a rehearing and allowed the Registrar to file briefs and to argue orally.

We must now consider whether under the Torrens Act, as the Registrar contends, a judgment creditor who has registered his judgment after the judgment debtor has conveyed his interest in the property acquires an interest superior to that of a prior grantee from the debtor who did not register his deed. The principal objective of the Torrens Act is "to provide an independent system of registration, whereby an intending purchaser of land can determine from the register the condition of the title." (*People v. Mortenson,* 404 Ill. 107, 111; *Miller v. Frederick's Brewing Co.,* 405 Ill. 591, 594;*Hacken v. Isenberg,* 288 Ill. 589, 599-600.) While generally it has been held that to achieve this all matters affecting title to registered property should be either registered or memorialized so that the Registrar's duplicate certificate will indicate to all interested parties the status of the title (*Miller v. Frederick's Brewing Co.,* 405 Ill. 591, 594; *People v. Mortenson,* 404 Ill. 107, 113; *Hartsman v. Kaindl,* 400 Ill. 243; *Evans v. Chicago Title and Trust Co.,* 317 Ill. 11), we have held that the provisions of the Act must be construed

in light of the established law of property and that the register of title will not always be considered conclusive. *Chicago and Riverdale Lumber Co. v. Vellenga,* 305 Ill. 415, 417-18; *In re Bickel,* 301 Ill. 484, 492.

The language of the Torrens Act does not provide any direct answer to the Registrar's contention; nor has the contention been considered in any reported decision in Illinois. The Registrar urges that in order to serve the objective of the Act, that is, to enable an intending purchaser to determine the condition of title from the register we should read into the Act a provision similar to section 30 of "An Act concerning conveyances" (Ill. Rev. Stat. 1973, ch. 30, par. 29) (hereafter the Conveyance Act). Section 30 provides that a judgment creditor, as well as a *bona fide* purchaser, who records his judgment in accordance with the provisions of the Conveyance Act (Ill. Rev. Stat. 1973, ch. 30, pars. 1-37(a)) acquires rights superior to those of the holder of a prior unrecorded interest. It is only because of this statute that a judgment creditor will prevail over the holder of a prior but unrecorded interest. *Hooper v. Haas,* 332 Ill. 561, 568; *East St. Louis Lumber Co. v. Schnipper,* 310 Ill. 150, 156; 3 E. Grigsby, Illinois Real Property, secs. 1194, 1208 (1948).

The plea of the Registrar that we read into the Torrens Act what section 30 of the Conveyance Act provides cannot be allowed. To do so would be an egregious intrusion upon the legislative authority. The Torrens Act was designed by the legislature to protect intending purchasers (*People v. Mortenson,* 404 Ill. 107; *Balzer v. Pyles,* 350 Ill. 344; *In re Bickel,* 301 Ill. 484; *Hacken v. Isenberg,* 288 Ill. 589), and has never been considered to extend the preference to judgment creditors. Judgment creditors under section 30 are preferred to holders of prior but unrecorded interests only because of that statute. Section 30 existed prior to the Torrens Act and it is not unreasonable to say that had

the legislature intended that judgment creditors receive under the Torrens Act the priority and preference they are given under section 30 it would have inserted a provision in the Torrens Act similar to section 30.

The Torrens Act provides that in disputes under it, courts should be guided by the provisions of the Act, of course, and by general principles of equity. (Ill. Rev. Stat. 1973, ch. 30, pars. 59, 70, 130, 131; *Klouda v. Pechousek,* 414 Ill. 75; *Balzer v. Pyles,* 350 Ill. 344; *Amundson v. Glos,* 271 Ill. 209.) The holder of an unregistered interest has strong claims to equitable consideration, especially when, as here, the holder of an interest claiming preference (here, the Bank) did not rely upon the absence of a registration. We said in *Kostelny v. Peterson,* 19 Ill.2d 480, 484, that:

"Whereas at common law a deed took effect upon delivery without regard to recordation, (*Williamson v. Williamson,* 306 Ill. 533; *Delfosse v. Delfosse,* 287 Ill. 251; *Doe v. Miles,* 2 Scam. 315,) under the Torrens Act it is the registration itself which completes the conveyance of legal title. (*People v. Mortenson,* 404 Ill. 107.) This does not mean, however, that under the registration statute [Ill. Rev. Stat. 1973, ch. 30, par. 98] an unfiled deed must be considered as a mere executory contract. Rather, as was pointed out in *Klouda v. Pechousek,* 414 Ill. 75, and *Naiburg v. Hendriksen,* 370 Ill. 502, a deed to Torrens property may take effect in equity upon delivery to the grantee so as to immediately pass the equitable title."

Too, it has been held that a judgment creditor's lien extends under section 30 only to the actual interest of the judgment debtor in the property (*East St. Louis Lumber Co. v. Schnipper,* 310 Ill. 150; *Yarnell v. Brown,* 170 Ill. 362), and that this interest will not be extended to allow him to claim property of another in satisfaction of his lien

in the absence of a statute specifically giving him this right (*East St. Louis Lumber Co. v. Schnipper,* 310 Ill. 150, 156; see also *Sturdyvin v. Ward,* 336 Ill. 593, 602-03; *Hooper v. Haas,* 332 Ill. 561, 568; 3 E. Grigsby, Illinois Real Property, secs. 1194, 1208). It was said in *East St. Louis Lumber Co. v. Schnipper,* 310 Ill. 150, 156, that a judgment creditor cannot attach his judgment to a "mere naked legal estate when the entire equitable estate is vested in some third person."

When Valentine Echols quitclaimed his interest to the petitioner in September of 1966, he relinquished all equitable rights in the property. The Bank could not attach its judgment to the legal interest which remained in his name only because the petitioner had not registered the quitclaim deed. The trial court erred in not ordering the Registrar to remove the Bank's memorial.

We do not accept the Registrar's additional argument that since it was the petitioner's neglect that led the Bank to memorialize its judgment, the judgment creditor should prevail as a matter of equity. The force that this argument would have in the case of a *bona fide* purchaser for value who without notice purchased property relying on the state of the registered title of the property or the case of a mortgagee who made a loan because of a similar reliance does not extend to a judgment creditor who has not acted to his prejudice in reliance on the registered state of title. What this court observed in *East St. Louis Co. v. Schnipper,* 310 Ill. 150, 159-60, has relevance here:

> "A judgment creditor does not deal with the land, which is the specific thing that would be the subject of a purchase, nor does he part with any consideration nor buy from one having the apparent legal title. He is protected by section 30 of the Conveyance act, not because he is a purchaser without notice but because creditors are named as one of the classes who are given priority by that section. *** They do not

purchase anything or purport to do so. *** [Therefore,] the lien of a judgment or execution is limited to the actual title or interest which the judgment debtor has in property ***."

For the reasons given the judgment of the appellate court is affirmed.

*Judgment affirmed.*

MR. JUSTICE KLUCZYNSKI, dissenting:

I must respectfully dissent from the majority's opinion.

The issue presented in this appeal is whether a judgment lien, properly memorialized under the Torrens Act, attaches to the legal title of a registered owner after he has executed an unregistered deed of his entire interest to another. The Torrens Act contains a number of provisions relevant to this issue. Section 46 of the Act (Ill. Rev. Stat. 1973, ch. 30, par. 90) provides that the bringing of land under the Act, or any dealings with land registered thereunder, implies an agreement that the land be subject to the terms of the Act, *i.e.,* the holders of title take registered property "subject to all of the rights, privileges and obligations of such registration and the law applicable thereto," and are "presumed to know all of its terms" (*Eliason v. Wilborn,* 335 Ill. 352, 360, *aff'd,* 281 U.S. 457, 74 L. Ed. 962, 50 S. Ct. 382).

Section 54 states that a "deed *** purporting to convey *** registered land *** shall take effect only by way of contract *** and as authority to the registrar to register the transfer ***" and that only "on the completion of such registration [does] the land *** become transferred *** according to the *** terms of the deed ***." (Ill. Rev. Stat. 1973, ch. 30, par. 98.) Accordingly, petitioner's quitclaim deed from her husband was only a contract purporting to convey whatever interest he possessed in the joint tenancy at the time the transfer was

completed upon registration. Under the present factual situation, at the time the transfer was completed by registration, the interest of petitioner's husband was already subject to the judgment lien. Since section 45 (Ill. Rev. Stat. 1973, ch. 30, par. 89) provides that a lien properly memorialized shall be carried forward until cancelled according to the Act, it necessarily follows that a lien memorialized before land is transferred by registration must be carried forward.

This court has previously held section 54 (ch. 30, par. 98) not determinative in a number of cases, some cited by the majority, on the ground that an unregistered deed is effective to transfer the equitable title. None of these cases, however, involved the rights of a party who duly registered an interest from or through a registered owner as against the rights of another who claimed under a prior unregistered instrument. *Kostelny v. Peterson,* 19 Ill.2d 480 (statute of limitations for bringing an action on a written contract was no bar to the registration of a deed); *Klouda v. Pechousek,* 414 Ill. 75, and *Naiburg v. Hendriksen,* 370 Ill. 502 (unregistered deed effective to sever joint tenancy); and *Lucas v. Westray,* 408 Ill. 243 (unregistered deed purporting to create joint tenancy was effective to do so).

In the present case while petitioner received equitable title at the time of execution of the quitclaim deed from her husband, until she registered her interest, her husband had the power to encumber or transfer, voluntarily or involuntarily, his interest. Until it was registered, petitioner's equitable title was subject to divestment. Had the petitioner's husband voluntarily transferred his registered interest to another who was not a party to fraud, the latter would take the interest free of any claim by the petitioner. (Ill. Rev. Stat. 1973, ch. 30, par. 86; *Eliason v. Wilborn,* 335 Ill. 352, *aff'd,* 281 U.S. 457, 74 L. Ed. 962, 50 S. Ct. 382.) The Torrens Act provides no basis for distinguishing

in this regard between voluntary or involuntary conveyances, or between those who take by judgment lien, purchase or otherwise. The Act is very explicit:

> "Except in case of fraud and except as herein otherwise provided, *no person* taking a transfer of registered land, or *any* estate or interest therein, or of *any charge* upon the same from the registered owner shall be held to inquire into the circumstances under which, or the consideration for which such owner or any previous registered owner was registered, or be affected with notice, actual or constructive, of *any unregistered* trust, lien, *claim*, demand or *interest;* and the knowledge that *any unregistered* trust, lien, *claim*, demand or interest is in existence shall not of itself be imputed as fraud." (Emphasis added.) Ill. Rev. Stat. 1973, ch. 30, par. 86.

Section 84 of the Act (Ill. Rev. Stat. 1973, ch. 30, par. 121) states that no civil action affecting registered land shall be deemed *lis pendens* or notice to any person unless a certificate of the pendency of such action is filed with the Registrar and memorialized. Since petitioner's divorce action involved her interest in the land and resulted in a decree requiring the execution of a quitclaim deed, it was a suit affecting registered land. Had the action been memorialized according to the provisions of section 84, it would have provided notice to the Bank before it registered its judgment lien.

By virtue of section 30 of the Conveyance Act, a judgment creditor may have priority over the holder of a prior unrecorded interest in the same land. The opinion maintains that "[s]ection 30 existed prior to the Torrens Act and it is not unreasonable to say that had the legislature intended that judgment creditors receive under the Torrens Act the priority and preference they are given under section 30 it would have inserted a provision in the Torrens Act similar to section 30." The defect in this reasoning, however, is that it assumes the Torrens and the recording systems are comparable, while, in fact, the theoretical basis for each system and its practical operations are quite different.

Under the recording system, the legal title and the title of record may be completely different. A party who acquires an interest in land by deed under the recording system may or may not record this instrument. If the interest is not recorded, the party who takes under it faces the risk that a subsequent purchaser entitled to the protection of the recording act may, by virtue of that act, acquire priority. In Illinois, a subsequent purchaser is entitled to the Act's protection if he is a purchaser in good faith, without notice of the prior unrecorded instrument, pays value and records first. (*Simmons v. Stum,* 101 Ill. 454.) The recording of an instrument imparts constructive notice and prevents subsequent purchasers from taking without notice. Under the recording acts of most jurisdictions, judgment creditors are not protected by the acts because they are not considered to be purchasers or are not considered to have paid value within the meaning of those acts. (See *e.g., Holden v. Garrett* (1879), 23 Kan. 98; *Kartchner v. State Tax Com.* (1956), 4 Utah 2d 382, 294 P.2d 790.) Thus, the necessity of a section 30 is apparent to place judgment creditors at some level of priority.

The Torrens system of registration is an almost completely different system in both theory and practical operation. Under Torrens, the title itself is registered, not merely the evidences thereof. "The Torrens Act differs in many material respects from the usual method of transferring title and the requirement for recording instruments affecting title. In respect to property not registered under the Torrens Act, title is transferred by the delivery of a deed from the owner to the grantee. The recording of such instrument is not necessary to the validity of the transfer." *People v. Mortenson,* 404 Ill. 107, 111.

The goal of the Torrens system is to make the public record in the Registrar's office and the actual title one and the same. (See Patton, *Evolution of Legislation on Proof of Title to Land,* 30 Wash. L. Rev. 224 (1955); Annot., 1916D L.R.A. 1.) Unlike the recording system, the

Torrens system does not operate by conferring priorities upon those who qualify as protected parties. The latter system operates by making record title in the register and actual title virtually identical, thus enabling anyone to ascertain the true state of the title by only examining the certificate in the register and ordering a tax lien search. Under the Torrens system, questions of good faith (except in cases of fraud), notice, reliance and payment of value are immaterial. (Ill. Rev. Stat. 1973, ch. 30, par. 86.) Therefore, it was unnecessary for the legislature to make a special provision for judgment lienors in the Torrens Act similar to section 30 of the Conveyance Act. In reviewing other jurisdictions which have a Torrens Act substantially similar, if not identical, to the Illinois act, those jurisdictions have held that a properly registered judgment lien takes precedence over a prior but unregistered owner. Moreover, they did not find it necessary to impute into the acts a provision comparable to section 30 to reach this result. *Sterling National Bank v. Fischer* (1924), 75 Colo. 371, 226 P. 146; *Worcester v. Ocampo* (1916), 34 Phil. 646.

Many of the inadequacies of the recording system as a means of title assurance are due to the fact that the title of record and the legal title do not have to be the same and often are not. The framers of the Torrens Act attempted to remedy these inadequacies by making registered title and legal title the same. A number of jurisdictions, for example, have held that adverse possession titles are outside of the recording system because the adverse possessor has nothing to record. (See *Mugaas v. Smith* (1949), 33 Wash. 2d 429, 206 P.2d 332; *Ridgeway v. Holliday* (1875), 59 Mo. 444, 454; *Schall v. Williams Valley R.R. Co.* (1860), 35 Pa. 191, 204.) Consequently, in these jurisdictions good faith purchasers without notice are not protected by the recording acts from prior adverse possession titles. In contrast, purchasers and others do not have to be concerned about possible prior adverse posses-

sion titles in Torrens registered land, since the Act provides that there can be no adverse possession of registered land. (Ill. Rev. Stat. 1973, ch. 30, par. 85.) Another example is that prior unrecorded interests in land subject to the recording system may maintain their priority over subsequent good faith purchasers of interest in the same land through the doctrine of constructive notice through possession. (*Miller v. Bullington,* 381 Ill. 238.) Under the Torrens system, "[i]n furtherance of the theory that everything regarding a present title should be ascertainable from the certificate on file in the office of the Registrar of Titles, the time-honored doctrine in most states of constructive notice by reason of occupancy does not prevail." 2 Patton on Land Titles, sec. 682, at 624 (2d ed. 1957), citing, *inter alia, Bjornberg v. Myers,* 212 Ill. App. 257; *Rosewood Corp. v. Illinois Bell Telephone Co.,* 38 Ill.2d 29.

While the majority opinion is not completely clear in this regard, it appears to hold that a judgment lien, properly memorialized, affords a judgment creditor no priority over a prior unregistered claimant even upon execution and sale. Under this holding, had the Bank in the instant case proceeded with its lien to execution and sale and a subsequent purchaser obtained the registered land at the sale—after having inspected the certificate with the Registrar and noted the registered interest of the petitioner's husband, and the properly memorialized judgment lien of the Bank—the purchaser's interest would be inferior to that of the petitioner. Such a result presents serious problems in light of section 42 (ch. 30, par. 86), which provides that a purchaser of a registered interest need not look beyond the certificate of title, and this court's reasoning in such cases as *Eliason v. Wilborn,* 335 Ill. 352, *aff'd,* 281 U.S. 457, 74 L. Ed. 962, 50 S. Ct. 382. In *Eliason,* this court noted that even in cases involving fraud a certificate will pass title to a *bona fide* purchaser for value. (335 Ill. 352, 357.) Moreover, this extension of

the majority's opinion is in clear conflict with its statement that the principal objective of the Torrens Act is to protect intending purchasers.

The majority maintains that "[t]he principal objective of the Torrens Act is 'to provide an independent system of registration, whereby an intending purchaser of land can determine from the register the condition of the title.'" While this statement may express a primary objective of the Act, it does not state all the objectives, nor necessarily the principal objective. The authorities relied upon for the above-quoted language further provide, in contrast:

> "The purpose of the Torrens Act is to make the condition of the title available to *any interested person* from an examination of the Torrens certificate. This information is available not only to the record owner of the land, but to any prospective purchaser *or other third party* investigating the condition of the title. In other words, the Torrens system serves a broader purpose than merely to notify the record owner of instruments affecting title. It is notice to all the world of the condition of the title to that property." (Emphasis added.) (*People v. Mortenson,* 404 Ill. 107, 115.)
>
> "The object of the Torrens system was to create an independent system of registration of land titles, and that all instruments intended for the purpose of passing or affecting any title to real estate should be filed and registered in that department and no other. *** The main object of our statute in thus limiting the effect of a deed or other instrument affecting real estate is to compel the grantee or party interested in the title of the record owner to register his title or interest in the registrar's office, in order that subsequent purchasers or *parties dealing with the title may have notice of such title or interest.*" (Emphasis

added.) (*Hacken v. Isenberg*, 288 Ill. 589, 599-600.)

This language clearly indicates that the purpose of the Torrens Act is not so narrowly confined as the majority holds, and that "[i] t was designed to encourage reliance on the state of the registered title." *Naiburg v. Hendriksen*, 370 Ill. 502, 507.

The majority's contention that the Torrens Act was designed to protect intending purchasers and not judgment creditors is refuted by cases from other jurisdictions. In *Eaton v. Doub* (1925), 190 N.C. 14, 128 S.E. 494, which involved the same issue as raised here, the North Carolina Supreme Court, in finding for the judgment creditor, concluded: "No distinction is made in the statute (C.S., 3309) or in the opinions of this Court, construing and applying the statute, between creditors and purchasers for value. No conveyance of land is valid to pass any property from the donor or grantor, as against either creditors or purchasers for value, but from the registration thereof. As to a purchaser for value, who has recorded his deed, it has been held that a prior deed from the same grantor, unregistered, does not exist, as a conveyance or as color of title. We can discover no principle and no authority which requires or justifies such distinction in the construction or application of the statute ***." 190 N.C. 14, 19, 128 S.E. 494, 497.

*Mortenson* further held that "the basic purpose of the Torrens Act is to require a registration *** so that the registrar's certificate is the sole and exclusive evidence of title." (404 Ill. 107, 113.) This court recognized in that case the legislature's intention that the certificate should be "conclusive evidence" of the holder's title. This purpose is further supported by the Torrens Act, which provides that following the completion of registration of title the certificate shall be conclusive evidence of the facts contained therein. (Ill. Rev. Stat. 1973, ch. 30, par. 83.) The majority claims that the certificate of title will not

always be considered conclusive, but this result arises only in certain circumstances, such as those involving fraud (see *In re Bickel*, 301 Ill. 484, 492, and authorities cited therein), which are not present in the instant case. Absent proof of such circumstances, any interested party has a right to rely upon the certificate as conclusive evidence of the holder's title.

The opinion attempts to distinguish the present factual situation involving a judgment creditor from one involving a *bona fide* purchaser or a mortgagee. The distinction, it maintains, is that the latter parties would have detrimentally relied upon the state of the registered title, while the judgment creditor has not so relied. This view overlooks the obvious fact that had the judgment creditor not relied upon the condition of the registered title, it would not have memorialized its judgment. As previously stated, the Torrens Act was designed to encourage reliance on the state of the registered title. Between two innocent parties, the judgment creditor and the petitioner herein, the consequences of the petitioner's failure to register her title should be borne by her.

In view of the above-stated considerations, I would affirm the judgment of the circuit court.

UNDERWOOD and CREBS, JJ., join in this dissent.