(No. 18143.—

EDWARD ELIASON *et al.* Appellants, *vs.* CHARLES WILBORN
*et al.* Appellees.

*Opinion filed June 19, 1929.*

HEARD, J., dissenting.

McGilvray, Eames, Vaughan & Tilley, (Franklin E. Vaughan, of counsel,) for appellants.

Charles F. Glaeser, and Joseph G. Sheldon, for appellees.

Per Curiam: An opinion in this cause was filed at a former term of this court. A petition for rehearing was filed and allowed. Upon further consideration the court adheres to the conclusions reached in that opinion and it is re-adopted and re-filed.

Mr. Commissioner Partlow reported this opinion:

Appellants, Edward Eliason and Elin Eliason, his wife, filed their petition in the circuit court of Cook county under sections 93 and 94 of the Torrens act, against appellees, Charles Wilborn, Carrie S. Wilborn and the Noel State Bank, also Joseph F. Haas, as registrar of titles of Cook county, and Jerome C. Napletone, to cancel two certificates of title and for other relief. A demurrer was sustained to the petition as amended, it was dismissed for want of equity, and an appeal has been prosecuted to this court.

The petition sets out the following facts: On August 6, 1921, the title to the real estate was registered in Edward J. Haley and Mary A. Haley, his wife, and a certificate of title was issued to them. By *mesne* conveyances the title became vested in appellants and a certificate registering the title in them was issued by the registrar on September 21, 1923. On April 1, 1926, they entered into a written contract to sell the real estate to George B. and Pearl A. Kennedy, and the purchasers went into possession, have remained in possession since that time and have made all payments as provided in the contract. In May, 1926, appellants entered into negotiations with Jerome C. Napletone to sell the premises to him, subject to a mortgage for $2700,

and the contract of sale was to be assigned by them to Napletone. Appellants delivered to Napletone the contract of sale and their certificate of title to the premises. From May 18, 1926, until June 18, 1926, appellants constantly endeavored to obtain from Napletone either the amount which he was to pay for the premises, or to obtain from him the certificate of title and the contract of sale, but they were unable to get any settlement out of him. On June 19, 1926, they found the office of Napletone closed and were informed that he had defrauded various people in Chicago and had fled from the State. They then went to the office of the registrar of titles of Cook county and learned that Napletone on May 19, 1926, had deposited with the registrar the certificate of title of appellants, together with a pretended warranty deed from them to Napletone dated May 18, 1926, acknowledged before John Boyle, a notary public of Cook county, and filed on May 19, 1926, and on the same day, upon application of Napletone, a certificate showing title in him, subject to the mortgage of $2700, was issued by the registrar. The warranty deed purporting to be signed by appellants and conveying title to Napletone was a forgery. Appellants interviewed Boyle, who took the acknowledgment, and Boyle stated that he never before had seen appellants or either of them; that the persons who acknowledged the deed were introduced to him under the names of appellants; that they were not appellants but were persons unknown to Boyle. A warranty deed from Napletone to Charles Wilborn and Carrie Wilborn, his wife, dated May 24, 1926, acknowledged before Julie V. Bahr, a notary public, was filed for record on May 29, 1926. Appellants alleged that they are not informed whether this deed was the actual deed of Napletone and bore his genuine signature, but even if the signature thereto was genuine the deed was a nullity and ineffective to convey title because the grantor therein had no title. At the time appellants learned of the recording of these two deeds no certificate had been

issued by the registrar to the Wilborns but application had been made therefor. Appellants protested to the registrar against issuing such a certificate and notified him of the forgery of the deed from appellants to Napletone, but the registrar on May 29, 1926, issued a certificate to the Wilborns. At the time of the execution of the purported deed from Napletone to the Wilborns, Napletone delivered to the Wilborns the contract of sale, together with a purported assignment thereof to him from appellants dated May 18, 1926, and acknowledged before Boyle as a notary public. The signatures of appellants to this assignment were forged. Boyle stated to appellants that the persons who acknowledged the assignment were the same persons who acknowledged the pretended deed from appellants to Napletone and that they were not appellants. Napletone also delivered to the Wilborns an assignment of the contract of sale from him to the Wilborns. The contract of sale is now held by the Noel State Bank for collection, together with the two purported assignments thereof. Appellants made application to the registrar to cancel the record of the two deeds, the certificate issued to Napletone, the certificate issued to the Wilborns, and asked that a certificate be issued to appellants showing title in them, but the registrar refused so to do.

A demurrer was filed to the petition, whereupon appellants filed an amendment, in which they alleged that prior to the issuance of the certificate to the Wilborns the Wilborns had actual notice and knowledge of the claim of appellants that the warranty deed purporting to be signed by them, and the assignment of the contract of sale purporting to be signed by them, were in fact not executed or acknowledged by them, and that each of them was a forgery and of no effect in law.

The prayer of the petition was that the two purported warranty deeds and the assignments of the contract be declared null and void; that the registrar be ordered to cancel

and annul the certificates issued to Napletone and the Wilborns; that the Wilborns and the Noel State Bank be ordered to deliver to appellants the contract of sale, to account to appellants for any money paid by the purchasers under the contract, and that the assignments of the contract be held to be null and void; that the title be vested in appellants free of all liens and encumbrances except such as appear upon the certificate issued to them, subject to the mortgage of $2700 and subject to the rights of the Kennedys under their contract of sale. After the petition was amended another demurrer was filed, which was sustained, a decree was entered dismissing the petition for want of equity, and this appeal followed.

It is contended by appellants that a grantee in a forged deed takes no title; that sections 40 and 42 of the Torrens act do not by their terms include registered titles based upon forged deeds; that fraud and forgery, within the meaning of the law, are two separate and distinct things; that inasmuch as the act makes no reference or provision as to the effect of forgery upon the title of registered owners, the general principle of law prevails that no valid title can be based upon a forged deed, and that if these sections are otherwise construed they are unconstitutional.

The last part of section 40 of the Torrens act provides: "The registered owner of any estate or interest in land brought under this act shall, except in cases of fraud to which he is a party, or of the person through whom he claims without valuable consideration paid in good faith, hold the same subject to the charges hereinabove set forth and also only to such estate, mortgages, liens, charges and interests as may be noted in the last certificate of title in the registrar's office and free from all others except: (1) Any subsisting lease or agreement for a lease for a period of not exceeding five years, where there is actual occupation of the land under the lease. The term lease shall include a verbal letting. (2) General taxes for the calendar year

in which the certificate of title is issued, and special taxes or assessments which have not been confirmed. (3) Such right of appeal, writ of error, right to appear and contest the application, and action to make counter-claim as is allowed by this act." Section 42 is as follows: "Except in case of fraud and except as herein otherwise provided, no person taking a transfer of registered land, or any estate or interest therein, or of any charge upon the same from the registered owner shall be held to inquire into the circumstances under which, or the consideration for which such owner or any previous registered owner was registered, or be affected with notice, actual or constructive, of any unregistered trust, lien, claim, demand or interest; and the knowledge that any unregistered lien, claim, demand or interest is in existence shall not of itself be imputed as fraud."

Fraud is the only exception mentioned in the statute where the certificate does not carry with it a good title. In cases of fraud the title is good in the hands of a *bona fide* purchaser for value. If forgery is not a species of fraud, as contended by appellants, then the statute by its terms makes the certificate the basis of a good title even in cases of forgery. Appellants in their brief say that "undoubtedly forgery is a species of fraud, yet the term 'fraud' is used constantly in statutory enactments and in opinions by the courts of this State as a basis for decisions which would be impossible if the documents in question were forged." While it is true there is a distinction between fraud and forgery, and forgery contains some elements that are not included in fraud, yet all forgeries are a species of fraud. The Century Dictionary defines fraud as "an act or course of deception deliberately practiced with the view of gaining a wrong or unfair advantage; deceit; trick; an artifice by which the right or interest of another is injured." In Story's Equity Jurisprudence (vol. 1, secs. 186, 187,) it is stated that fraud, in its general sense, comprises all acts, omissions and concealments involving a breach of legal or

equitable duty, trust or confidence and resulting in damage to another. This definition is approved in *Diversey* v. *Johnson*, 93 Ill. 547, and 26 Corpus Juris, 1059. Bouvier's Law Dictionary (vol. 1, p. 843,) states that active and positive fraud includes cases of the intentional and successful employment of any cunning, deception or artifice to circumvent, cheat or deceive another. Forgery is the fraudulent making or altering of a writing with the intent to prejudice the rights of another. (*People* v. *Meyer*, 289 Ill. 184.) Every forgery includes acts and courses of deception deliberately practiced with a view of gaining a wrong or unfair advantage. It includes deceit, trick or artifice used to circumvent, cheat or deceive another. A fraud may be perpetrated by means of a forgery as well as by any other form of deception. The term "fraud," as used in the statute, is not limited to any particular kind of fraud but covers fraud of every kind and description, and therefore includes forgery. The petition did not allege that the Wilborns were not purchasers for value, nor did it allege that they had notice of the forgeries prior to the date of their deeds from Napletone. In these respects the petition was defective and was subject to demurrer. It did allege that the Wilborns had notice of the forgery prior to the time the title was registered in them, but this allegation was not sufficient to entitle appellants to relief. Napletone did not take a good title under his certificate because he was a party to the forgery, but if the Wilborns were purchasers for value in good faith they were not required to inquire prior to the date of the certificate to Napletone, and they took a good title unless the statute is unconstitutional.

Appellants insist that if this construction is placed upon the statute it is unconstitutional, for the reason that it is in violation of section 2 of article 2 of the State constitution and the fifth amendment to the Federal constitution, which provide that no person shall be deprived of life, liberty or property without due process of law. The principal grounds

for claiming that the statute is unconstitutional are, that there is no provision in it for notice to appellants so they could have the opportunity to appear and defend their title, and that because no opportunity was given them to defend they were deprived of their property without due process of law.

In determining whether the statute is unconstitutional its various provisions must be considered as a whole. The act is optional in the various counties of the State. It is not compulsory in any county and can only become operative by a vote of the people, as provided in section 110. After it has been adopted by a county it is not compulsory as to any person owning land in the county. No one is required to register his land unless he sees fit to do so. When an owner brings his land under the act he presumptively does so with notice of all of its provisions and requirements, including its rights, privileges and obligations. When he does voluntarily submit his land to the operation of the act he has no cause to complain that the act is unconstitutional. (*Victor Chemical Works* v. *Industrial Board,* 274 Ill. 11; *Dietz* v. *Big Muddy Coal Co.* 263 id. 480; *Crooks* v. *Tazewell Coal Co.* 263 id. 343; *Deibeikis* v. *Link-Belt Co.* 261 id. 454.) Under section 46, when land is registered there is an implied agreement, which runs with the land, that the same shall be subject to the terms of the act and to all amendments and alterations thereto. Upon the original application to register, the statute requires that all persons interested or in possession shall be made parties defendant; that there shall be personal service or service by publication on all defendants; that there shall be a full and complete hearing, with ample opportunity to all parties to present and preserve their rights. Section 36 provides for the preservation with the registrar of the original certificate of title issued and the delivery of a duplicate certificate to the applicant. Section 37 provides for the preservation of the evidence of the handwriting of the holder of the duplicate

certificate, and that his receipt therefor, in his handwriting, shall be *prima facie* evidence of the genuineness of his signature. After the hearing, if a certificate is granted, the effect of such certificate is specified in sections 40 and 42 above noted.

The land in this case was first registered in the names of the Haleys and a certificate was issued to them. When appellants bought it they knew the title had been registered, and they took it subject to all of the rights, privileges and obligations of such registration and the law applicable thereto. They were under no obligations to buy, but when they did buy and registered their title they came under all of the provisions of the act and were presumed to know all of its terms. The title was registered in appellants under section 47, which provides that when a registered owner desires to sell his land he may transfer it by deed, and upon filing the deed in the registrar's office and surrendering to the registrar the duplicate certificate of title, and upon its being made to appear to the registrar that the transferor has the title proposed to be transferred, he shall issue and register a new certificate in the name of the applicant. After the title was registered in appellants it could not be registered in Napletone until the duplicate certificate to appellants was surrendered to the registrar. If section 47 had been complied with it would have been impossible for Napletone to have accomplished this fraud. The act erected a safeguard against a forged transfer being registered, by the requirement that no transfer should be registered unless the owner's certificate was produced along with the instrument of transfer. Section 101 provides that any person wrongfully deprived of any land through the bringing of the same under the provisions of the act or by the registration of any other person as owner of such land, the person who is barred or who in any way is precluded from bringing an action for the recovery of such land shall have a right of action for damages against the county and may file a claim

with the county board or bring an action at law for the recovery of such damages. In *Board of Education* v. *Blodgett,* 155 Ill. 441, it was held that the deprivation of a remedy is equivalent to a deprivation of the right which it is intended to vindicate, unless another remedy exists or is substituted for that which is taken away.

Many States and foreign countries have statutes similar to ours which have been in force for many years. Appellees cite cases from Australia, New Zealand and Canada where it has been held that the registration of a title based upon a forged deed is not good in favor of a party to the forgery but is good in favor of a *bona fide* purchaser for value. (*Anderson* v. *Davy,* 1 N. Z. L. 302; *Whakaruru* v. *Public Trustee,* 12 id. 651; *Fawkes* v. *Attorney General,* 6 Ont. L. 490.) In Thom on Canadian Torrens System it is said (p. 192): "It has never been disputed, however, that while a certificate of title issued on forgery may not be good in favor of the owner through the forgery even though *bona fide* and for value, the real person holding such certificate of title may transfer a good title to a third person." In Hogg on Registration of Title to Land Through the Empire it is said (p. 142): "Forgery, of course, necessarily implies fraud. Cases of forgery, however, strongly illustrate the conclusive effect of registration of a *bona fide* purchaser for value from a vendor whose registration has been procured by fraud. Such a purchaser's title may be upheld even where his vendor (the previous registered owner) has been registered by means of his own forgery—that is, has been himself the forger and not merely the victim of another person's forgery." Niblack, in his Analysis of the Torrens System, at page 201 says: "Unless otherwise provided in a Torrens act, the rule in case of forgery may be stated as follows: The registration of a forger, or of a person in good faith and for value as the result of a forgery, or of a person claiming under either of them without a valuable consideration paid in

good faith, may be set aside, but the registration of a person for value in good faith, claiming under any one of these, will hold the title as against the former registered owner who is the victim of the forgery, and all claiming under him. A forged transfer or mortgage will become the root of a valid title." The author of this work was a member of the Chicago bar and the work relates primarily to the Illinois act.

Section 34 of the California statute, passed in 1897, is similar to the first part of section 40 of our statute above quoted. Section 36 of the California statute is identical with section 42 of our statute. Section 37 provides that in case of fraud the registration shall not be good in favor of the persons who perpetrated the fraud but is good as to subsequent purchasers for value in good faith. Section 38 makes the same provision as to forgery that section 37 makes as to fraud. Several States have provisions similar or identical with sections 40 and 42. Most of these statutes have been in force for many years, and no case is cited where any of them have been held to be unconstitutional on the grounds here urged by appellants.

Forgery is included in the term "fraud" as used in the statute. The statute is not unconstitutional because it deprived appellants of the title to their property without due process of law. It makes ample provision for the protection of all persons interested. Appellants lost their property by reason of their failure to safeguard their interests and not by reason of any defect in the statute.

The demurrer to the petition was properly sustained, and the decree will be affirmed.

Per CURIAM : The foregoing opinion reported by Mr. Commissioner Partlow is hereby adopted as the opinion of the court, and judgment is entered in accordance therewith.

*Decree affirmed.*

Mr. JUSTICE HEARD, dissenting.