John Prassas, Plaintiff-Appellee, v. Joseph Jana et al., Defendants, Steve Economou et al., Intervening Petitioners-Appellees, Joseph F. Ropa, Registrar of Titles, Cook County, Illinois, Defendant-Appellee, and Unknown Owners, Defendants-Appellants.

### Gen. No. 46,372.

First District, First Division.
December 13, 1954.
Rehearing denied January 26, 1955.
Released for publication March 7, 1955.

Kriebel, Hubbard, Berdine & Corwin, of Chicago, for appellants.

Bernard M. Peskin, of Chicago, for certain appellees.

MR. PRESIDING JUSTICE BURKE delivered the opinion of the court.

In December 1922, two vacant lots in Berwyn were registered under the Torrens land title system. On February 15, 1927, Frank J. Slifka and Adolphine Slifka, his wife, the then owners of the premises, being indebted in the sum of $5,000, executed and delivered their promissory note for that amount due on or before February 15, 1929, with interest at six per cent per

annum payable semiannually, and to secure payment of which they also executed and delivered a trust deed. Thereafter the Slifkas conveyed their interest to Joseph Jana and Jessie Jana, his wife. On June 8, 1927, the Registrar of Titles of Cook county issued certificate of title No. 193452 and the owner's duplicate thereof certifying that Joseph Jana and Jessie Jana, his wife, were the owners of an estate in fee simple in joint tenancy of the two lots, subject to the lien of the trust deed. The payment of the note was extended to February 15, 1934.

In a complaint filed on September 6, 1952, John W. Prassas sought a strict foreclosure of the trust deed. All parties to the foreclosure suit, including "Unknown Owners," were served by publication and no notice by mail or otherwise was sent to any of them. On March 31, 1953, a decree of strict foreclosure was entered. Thereafter a deed was issued to Prassas by a master in chancery. On July 16, 1953, Prassas and his wife conveyed title to Steve Economou who, with his wife, conveyed on August 10, 1953, to Frank J. Gradishar and Frances Gradishar, who claim to be bona fide purchasers. The decree, the deed to Prassas and the deed from him and his wife to Economou were registered on July 16, 1953, against the Jana certificate of title No. 193452, and the deed from Economou and his wife to the Gradishars was registered against the same certificate on August 10, 1953.

On September 9, 1953, a petition to vacate the decree and set aside the subsequent deeds was filed under section 50 (8) of the Practice Act [Ill. Rev. Stats. 1953, ch. 110, § 174, subd. (8); Jones Ill. Stats. Ann. 104.050, subd. (8)] by Ella Kveton and Berwyn Lumber Company, a corporation, alleging that the corporation held the fee title to the real estate; that less than one year had expired after the entry of the decree; that the statute of limitations had run against the note and trust deed; that there was no proof of insolvency of any defendant; that there was no proof that any sum was

due upon the note and trust deed; that there was no proof that the premises were scant security for the debt; and that no strict foreclosure could be decreed because the premises were not owned by the mortgagors at the time the complaint was filed. Attached to the petition are copies of deeds showing that the fee interest of the Janas in the property was conveyed on April 10, 1947, to Ella Kveton who, on June 25, 1953, transferred her interest to the corporation. The last two deeds have not been registered. The petition further alleged that Ella Kveton was at all times after the conveyance of the premises to her holding title as a nominee for the corporation. Steve Economou and the Gradishars, having intervened, filed a petition asserting that Economou purchased the title of Prassas, acquired in the foreclosure suit, and thereafter conveyed to the Gradishars, who paid a valuable consideration therefor; that Economou and the Gradishars were bona fide purchasers as the registrar "represented to both petitioner, his grantees and grantors, that title to said property was free and clear of all objections save taxes, and petitioner relied on these representations in paying over to his grantor the purchase price for said property and in conveying to the aforesaid Frank J. Gradishar and Frances Gradishar." The petition charged that the petitioners were misled into paying money to Prassas because of the failure of Ella Kveton and Berwyn Lumber Company to file their deeds. The claim that Economou and the Gradishars were bona fide purchasers was denied in an answer by Ella Kveton and the corporation.

The basis for claiming a bona fide purchase is reliance upon the original Torrens certificate. It appears from the record of the original certificate of title No. 193452 that Joseph Jana and Jessie Jana are in title; that memorials referring to the trust deed and the extensions are marked "out" by the assistant examiner of titles; that the deeds from the master to Prassas,

from Prassas to Economou and from Economou to the Gradishars are registered against certificate No. 193452. The original Torrens certificate also shows that a decree was filed for registry on July 16, 1953, at the same time the deeds from the master to Prassas and from Prassas to Economou were filed. This was the condition of the title as shown by the certificate of title at the time of the deed to the Gradishars was filed on August 10, 1953. It appears from the certificate that no mortgagee's duplicate certificate was ever issued upon the trust deed and consequently no certificate of title of any kind was or could have been produced for cancellation by the registrar at the time the deed to Prassas was filed. The owner's duplicate certificate of title No. 193452 showing title in the Janas was produced by the corporation and received in evidence as an exhibit, and bore notations that a decree and two deeds were filed on July 16, 1953, as documents Nos. 1472740–41 and 42. On October 14, 1953, subsequent to the entry of the foreclosure decree and the filing of the petitions, the registrar of titles was made a party hereto and filed an answer. After a hearing the chancellor dismissed the petition of Ella Kveton and the corporation and they appeal.

██ We agree with the contention of the appellants that as the grantees in unregistered deeds they have a right to appear and assert their claims in due time under section 50 (8) of the Practice Act. Walker v. Ogden, 192 Ill. 314; Glos v. People, 259 Ill. 332; Schuster v. Elsner, 250 Ill. App. 192. Although the deeds to appellants were not registered they conveyed an immediate interest in the premises. By joining "Unknown Owners" as parties the plaintiff obtained jurisdiction as to appellants and their equitable interests would have been cut off if they had not in due time moved to vacate the decree. The right of a person served by publication to attack a decree within one

year from its entry applies to real estate registered under the Torrens Act.

█ Appellees say that the original Torrens certificate of title issued to the Janas was canceled. There is nothing in the record to support the statement. A copy of the original certificate, received as an exhibit, shows the Janas as the fee owners and that the certificate of title is not canceled. The appellees maintain that they are bona fide purchasers for value and without notice of defects in the title to the premises. They claim to have relied upon what the registrar or someone in the Torrens office told them about the title and on the "canceled" certificate of title showing the Janas as the fee owners. In order to protect a buyer, he or his attorney must examine the Torrens certificate. People v. Mortenson, 404 Ill. 107; Balzer v. Pyles, 350 Ill. 344; Eliason v. Wilborn, 335 Ill. 352.

Appellees also base their claim to being bona fide purchasers on the assertion that "the original Torrens certificate of title listed no uncanceled memoranda." When Economou obtained and filed his deed the certificate showed the Janas as the owners. The deed to Economou was filed on July 16, 1953, at the same time the foreclosure decree and the master's deed to Prassas, Economou's grantor, were filed. The document numbers appear upon the certificate as Nos. 1472740, 1472741 and 1472742. Economou, in order to trace the chain of title of Prassas, would necessarily examine the deed to Prassas which was issued by a master in chancery and was based upon the foreclosure decree filed with the deeds. The Gradishars, in obtaining and filing their deed from Economou, which deed was registered against the same uncanceled certificate of title on August 10, 1953, would necessarily follow the same procedure in checking the title. Economou had no title clearly appearing of record and any examination of his claim to ownership would reveal at once

391

that the record showed title in the Janas, and that the claimed fees in Prassas and then in Economou were based upon a foreclosure decree and not upon a conveyance from the Janas. Any person in the position of either Economou or the Gradishars would be required under the circumstances, in order to assert any claim as bona fide purchasers, to examine both the certificate of title, and since the certificate showed no title in any of the grantors, the deeds and the foreclosure suit.

Even a cursory inspection of the certificate and the suit would reveal that no mortgagee's duplicate certificate of title had been issued; that the owner's duplicate certificate was not surrendered for cancellation; that no court order was entered requiring the registrar to cancel the outstanding certificate of title and issue a new one; that the title of Prassas was based upon a judicial sale and was subject to a possible motion to vacate for one year after March 31, 1953; that all parties to the suit were served by publication; that the time to file a motion under section 50 (8) of the Practice Act would not expire until March 31, 1954; that no *lis pendens* notice of the foreclosure suit was filed; that an unsigned and therefore void certificate of title was allegedly shown to the purchasers; and that the face of the certificate of title showed that there could be a valid claim that the note and trust deed upon which the foreclosure suit and title of Prassas were based were barred by the statute of limitations on February 15, 1944. The appellees knew or should have known of the defective title and they could not be bona fide purchasers without notice. There is no provision of the Torrens Act exempting Torrens titles from the operation of section 50 (8) of the Practice Act. Proceedings under the Torrens Act are governed by the rules of equity, except as the statute otherwise provides. Klouda v. Pechousek, 414 Ill. 75, 86. The cases cited by the appellees hold that one purchasing a Tor-

rens title may rely on the original certificate of title if it shows a clear title in the grantor and if the owner's duplicate certificate is surrendered for cancellation.

██ ██ Appellees urge that since the deeds to the appellants were not registered prior to the filing of the complaint to foreclose they do not have a right to question the foreclosure decree, citing Eliason v. Wilborn, 335 Ill. 352, and People v. Mortenson, 404 Ill. 107. In our opinion these cases are not applicable to the factual situation presented in the case at bar. In the Eliason case the court held it necessary for the grantee to inspect the certificate of title. There were no apparent defects in the title. Furthermore, the owner's duplicate certificate of title was surrendered for cancellation. In the instant case the certificate showed on its face that the title was defective and in addition there was the highly suspicious circumstance that no owner's duplicate certificate of title was surrendered for cancellation. Economou and the Gradishars are charged with notice that their deeds were accepted for registration in complete disregard of section 88 of the Torrens Act (par. 125, ch. 30, Ill. Rev. Stats. 1953 [Jones Ill. Stats. Ann. 132.081]) that in case of sale of registered land by a master in chancery or other person pursuant to a decree, no transfer of the title shall be made by the registrar except upon the surrender and cancellation of the certificate of title or upon an order of the court filed with the registrar directing such transfer, and in case of the transfer of the fee, directing the cancellation of the outstanding certificate and granting to the transferee a writ of assistance to put him in possession of the premises. No such situation arose in the Eliason case. In the Mortenson case the court said (112): "When title is registered under the Torrens system in the name of one person, it cannot again be registered in another's name until the duplicate certificate is surrendered to the registrar."

Furthermore, there was no compliance with the requirement of section 47 of the Torrens Act (par. 91, ch. 30, Ill. Rev. Stats. 1953 [Jones Ill. Stats. Ann. 132.047]) that upon the filing of a deed or other instrument in the registrar's office *and surrendering to the registrar the duplicate certificate of title* and upon it being made to appear to the registrar that the transferee has the title or interest proposed to be transferred and is entitled to make the conveyance and that the transferee has the right to have such estate or interest transferred to him, the registrar shall make out and register a new certificate and also an owner's duplicate certifying the title to the estate or interest in the land to be in the transferee and *shall stamp across the original and surrendered duplicate the word "canceled."* Regardless of their knowledge of the basis of Prassas' title, Economou and the Gradishars were put upon notice of any defect by reason of the failure of anyone to surrender the owner's duplicate certificate of title or to produce and file a court order directing its cancellation.

 Economou and the Gradishars contend that they relied upon the Torrens records and that they were misled by the failure of the appellants to file their deeds. An injury does not arise because of the failure to file the deeds. All the defendants to the foreclosure complaint were served by publication. If no deed had been issued to the appellants, nonetheless the Janas, the Slifkas, the trustee or any "Unknown Owner" could have filed a motion to vacate the decree at any time prior to March 31, 1954. The damage, if any, to Economou and the Gradishars was not caused by any failure to register the deeds but by the fact that they were parties to the action who were served by publication, which rendered any decree subject to a motion to vacate for the period of one year. The addition of "Unknown Owners" to the list of defendants served in a suit by publication permits anyone having any interest by un-

394

recorded deed, dower, lien, reversion, remainder or otherwise to question a decree under section 50 (8) of the Practice Act. Walker v. Ogden, 192 Ill. 314; Glos v. People, 259 Ill. 332. The right to file a motion to vacate a decree is dependent on service by publication. The only time limitation is that specified in the section.

■ The appellees rely on section 42 of the Torrens Act (par. 86, ch. 30, Ill. Rev. Stats. 1953 [Jones Ill. Stats. Ann. 132.042]) that except in case of fraud or as otherwise provided no person taking a transfer of registered land shall be held to inquire into the circumstances under which any previous registered own- . er was registered, or be affected with notice, actual or constructive, of any unregistered interest therein, and conclude that so long as the registrar exhibited to them as purchasers a canceled certificate of title which showed no uncanceled memorials and the registrar accepted and registered the deeds, that Economou and the Gradishars, in the absence of fraud, were entitled to a certificate of title and were not required to inquire into the circumstances under which their grantors were registered. The appellants concede that if the original Torrens certificate of title shows a clear fee title in the registered owner with no notations on the certificate which might tend to arouse suspicion, and if at the time of registration of the grantee's deed, the grantor, who also appears on the certificate as the registered owner, surrenders for cancellation the owner's duplicate certificate of title, the grantee will be protected as to unregistered titles or claims. We do not believe the cases cited by the appellees (Eliason v. Wilborn, 335 Ill. 352; People v. Mortenson, 404 Ill. 107; Chicago & Riverdale Lumber Co. v. Vellenga, 224 Ill. App. 505; Bjornberg v. Myers, 212 Ill. App. 257); support their contention. In People v. Mortenson, supra, the court said (112) that when title is registered under the Torrens system in the name of one person, it can-

not be registered in another's name until the duplicate certificate is surrendered to the registrar. No cases have been cited to us indicating that a purchaser of a Torrens title will be protected if he ignores defects or suspicious entries on the original certificate of title or if he accepts title without requiring cancellation of the outstanding owner's duplicate certificate, or of the filing of an order of court directing the cancellation of such certificate. As previously stated, the assumption by the appellees that the registrar of titles exhibited to the purchasers a canceled certificate of title has no foundation in the record. In fact, the owner's duplicate certificate of title remains uncanceled and no mortgagee's duplicate was ever issued. There has been no canceled certificate of title for the premises since the Janas acquired the present uncanceled certificate on June 8, 1927. The decisions relied on by the appellees are cases in which the original certificate of title showed the immediate grantor of the purchaser as the fee owner. There were no irregularities or unusual notations upon the original certificate and the outstanding duplicate certificate was surrendered for cancellation when the purchaser filed his deed. As an alternative to the surrender of the owner's duplicate certificate, a court order requiring the cancellation of the certificate can be obtained and registered when title is based on a judicial sale. The appellees state that a default judgment will not be set aside where the defaulted party, though having a meritorious defense, has been guilty of negligence. The cases cited in support of this statement deal with the rights of parties personally served to vacate judgments entered against them for failure to file defenses. They do not refer to the time limit for a motion under section 50 (8) of the Practice Act. Appellees suggest that appellants have a right of action for any loss against the county in the event of any omission, mistake or misfeasance of

the registrar or an examiner of titles. This possibility is immaterial to the issues in this case.

For the reasons stated the order of the superior court of Cook county is reversed and the cause is remanded with directions to proceed in a manner not inconsistent with the views expressed.

Order reversed and cause remanded with directions.

FRIEND and NIEMEYER, JJ., concur.