Carrie Hoffman and Marlene Schroeder, Plaintiffs, v. Charles W. Schroeder, Jr., et al., Defendants.
County of Cook and Registrar of Titles of Cook County, Defendants-Appellees, v. Avondale Savings and Loan Association, an Illinois Corporation, Defendant-Appellant.

Gen. No. 48,437.

First District, Third Division.

March 28, 1962.

Supplemental Opinion, October 24, 1962.

21

22

23

■

Ben Copple, of Chicago, for appellant.

Daniel P. Ward, State's Attorney of Cook County (Edward E. Plusdrak, First Assistant State's Attorney, Civil Division, and Thomas A. Hett, Assistant State's Attorney, of counsel), for appellees.

MR. JUSTICE SCHWARTZ delivered the opinion of the court.

Defendant Avondale Savings and Loan Association, hereinafter called Avondale, appeals from a decree holding that a mortgage securing a loan made by it was not a lien upon the interest of plaintiff Marlene Schroeder in certain property registered under the Torrens Act, and that Avondale is not entitled to indemnification out of an indemnity fund created pursuant to that act.

The case involves the rights of a mortgagee who accepted a mortgage signed by two persons, one who procured registration of his title by forgery, and the other an impostor who impersonated one of the true owners.

■ Although the Torrens System has been in effect more than sixty years, it is little known except to those who specialize in the field. We will therefore state in a subjoined note the character of the act

24

and its purpose.* A registered owner or one who takes from a *registered owner* holds his interest in assurance that his title will not be defeated by prior defects in his chain of title or that if it is, he will be indemnified, subject only to certain taxes, assessments and charges noted on the last certificate of title.

The property in question was originally registered in the names of plaintiffs Marlene Schroeder and her mother Carrie Hoffman as joint tenants. Pursuant to the act, they gave the Registrar a signature card signed by them as a receipt for their duplicate certificate of title.

In 1955, Charles Schroeder, Marlene's husband, conceived a scheme by which he could obtain a registered interest in the property and then, with the

---

\* The Torrens Act, Ill Rev Stats, c 30, §§ 45–148 (1961) is designed to establish a system of registration of land ownership whereby an interested party can ascertain from the register the condition of the title and have notice of the interests therein. To register, an owner of land makes application to a court having chancery jurisdiction, setting forth ownership, his estate or interest in it, the occupants of the land, the holders of liens, and whether any other persons have any claims or interest therein. Following publication, notice and adjudication of any adverse claims, a certificate of title is made and entered in a Register of Titles kept by the Registrar. A duplicate certificate of title is then given to the owner, who must in person sign a receipt which is kept as evidence of his handwriting and is prima facie proof of the genuineness of his signature. (§§ 80–81.) Thereafter, the transfer of any interest in said land is registered by filing the conveying instrument and the owner's duplicate certificate of title with the Registrar. (§ 91.) If the duplicate certificate is lost or destroyed, a copy is issued upon affidavit satisfying the Registrar of its truth and the bona fides of the transactions. (§ 102.) The Registrar shall exercise his judgment concerning the registration of a transfer or charge. (§§ 91, 104.) Upon the registration of a mortgage, a "Mortgagee's Duplicate Certificate" is delivered to the mortgagee. (§ 104.)

25

connivance of a woman accomplice, mortgage the property and receive the benefits thereof. He had Carrie Hoffman, who was an elderly woman, sign an affidavit that the owner's certificate of title had been lost, although actually it had not been. He then had her sign a warranty deed to his aunt Mathilda Glon. The forged signature of Marlene Schroeder was added to the warranty deed and affidavit and then Charles Schroeder, as a notary public, acknowledged the deed himself. Mathilda Glon, evidently being a conduit for the purpose, promptly executed a quitclaim deed conveying the property to Charles and Marlene Schroeder in joint tenancy.

Charles Schroeder then negotiated with Avondale for a $12,000 mortgage on the property. He signed the mortgage and an assignment of rents, to which documents he also forged or procured the forgery of his wife's name. Then Charles Schroeder and a woman impersonating his wife were taken before a notary public, one Alyce M. Pociask, who was an *assistant secretary of Avondale.* She took their acknowledgment although she had never seen them before. The affidavit, quitclaim deed, warranty deed, mortgage and assignment of rents were all tendered by Avondale's representative to the Registrar's office which accepted them, issued a new certificate of title to Mathilda Glon, immediately cancelled it and issued one to Charles and Marlene Schroeder, bearing memorials of the mortgage and note, and gave Avondale a "Mortgagee's Duplicate Certificate."

Five months later a new mortgage was executed increasing the loan to $17,000 and the foregoing procedure was repeated in all its essentials, the former mortgage and assignment of rents cancelled, and new ones registered. The Registrar before tendering new mortgagee's and the owner's duplicate certificates discovered the forgery and did not deliver the certifi-

cates. The checks Avondale gave to Charles and Marlene Schroeder were cashed by Charles, Marlene's endorsement thereon being forged. Neither Carrie Hoffman nor Marlene Schroeder received any of the proceeds of the loan. Of all these proceedings concerning her property, Marlene Schroeder was completely ignorant and innocent.

The cause was referred to a master in chancery who heard the evidence and made his report, finding in substance the facts we have hereinbefore stated, and concluded that Avondale paid over the money on the mortgage in good faith and reliance upon the certificate and obtained a valid mortgage lien on the undivided one-half interest of Charles Schroeder, which he derived through the deed from Carrie Hoffman. The master further found that there was no evidence that the signatures on the lost certificate affidavit and the warranty deed to Mathilda Glon (on both of which Marlene Schroeder's signature was forged) were compared with the signatures on the signature cards received by the Registrar when he delivered the owner's duplicate certificate at the time Carrie Hoffman and Marlene Schroeder were certified to be owners in joint tenancy, although the affidavit and deed did bear notations that the signatures were checked.

The chancellor heard the exceptions to the report and found that the signature of Marlene Schroeder was a forgery; that the acceptance of the mortgage for registration did not create a lien upon or interest in the property and did not create any liability on the part of the Registrar for any loss sustained by Avondale. The court declared void the warranty deed, the quitclaim deed, the lost certificate affidavit and any memorials in the office of the Registrar which purported to affect [sic] the interest of Charles Schroeder in the real estate involved.

27

The decree further held that so far as Carrie Hoffman was concerned, Avondale had a lien on her interest, but that she was entitled to be indemnified by Cook County. The basis for this was that the Registrar had accepted a deed, the acknowledgment of which had been taken by Charles Schroeder, an interested party, and was in that respect at fault. There has been no appeal from this provision of the decree, and we need not concern ourselves further with it.

As to Marlene Schroeder's interest, the decree held that the warranty deed was a nullity and the forgery of her signature on the mortgage and notes and their acceptance for registration created no lien on behalf of Avondale and that there was no liability on the Registrar or Cook County for the loss Avondale thereby suffered. It is from these provisions of the decree that Avondale appeals.

Essentially, Avondale's points are that the Registrar must refuse registration unless he is satisfied that the instrument is a proper one for registration; that the Registrar's acceptance constituted a determination that Charles and Marlene Schroeder had title; that the Registrar was negligent; and that Avondale should be indemnified for any loss it thereby suffered. The Registrar's reply to this is in substance that it is true the Registrar had registered Charles and Marlene Schroeder as the owners, but that Avondale did not acquire its mortgage lien by a conveyance from Marlene, a necessary party; that, on the contrary, it was the victim of one who forged or procured the forgery of her name and of one who impersonated her when the notary public took the acknowledgments. The Registrar goes somewhat farther and argues that it is the duty of one who takes and has a conveyance acknowledged to be certain he is dealing with the persons who are the registered owners. To this, Avondale replies that it was the Registrar who should have

28

discovered the fraud when it received the documents for registration; that it had on hand instruments with which it could have made a comparison of the genuine signature of Marlene Schroeder; and that with respect to these, the master who heard the evidence found the defects in the signatures and the acknowledgment by Charles Schroeder on the deeds and affidavit of lost certificate were sufficient to put the Registrar on notice.

 The first question is whether Avondale acquired a lien on the property and if it did, whether that interest may be defeated. In our consideration of the questions involved in this case, the adjudications of the Commonwealth nations construing their land title acts are of persuasive influence, as our act is patterned after theirs. Bjornberg v. Myers, 212 Ill App 257. Section 86 of the act provides that except in case of fraud, no person taking a transfer of registered land shall be held to inquire into the circumstances or consideration concerning the registration of the owner from whom he takes or any prior owner or to be charged with notice. Ill Rev Stats, c 30, § 86 (1961). The initial qualification of "except in the case of fraud" must mean the fraud of the person taking the transfer. To hold that it means the fraud of the conveying party in acquiring title would frustrate the purpose of the act. Cullen v. Thompson, 5 VLR, E 147 (1879); cf. Eliason v. Wilborn, 335 Ill 352, 167 NE 101, affd, 281 US 457.

██ However, while Avondale was itself free from fraud, it did not take the interest in question from the registered owner, Marlene Schroeder, but took from her impersonator. The section clearly relates to the taking of a transfer from one who is registered as an owner, and the protection applies only to such a transferee, not to a person who takes from an impersonator of the one who is registered as owner.

29

Section 84 of the act, however, presents a more difficult problem. It provides that the registered owner has good title unless he is a party to fraud or takes, without consideration paid in good faith, from a party to fraud. Ill Rev Stats, c 30, § 84 (1961). In the instant case Avondale has been registered as owner of the mortgage, but is not a registered owner in the sense that it did not obtain its registration as a result of a transfer from the true registered owner, but from one who impersonated her. This is the approach taken by the nations of the Commonwealth. Compare Cullen v. Thompson, supra, and Assets Co. v. Roihi, [1905] AC 176 (PCNZ), where the purchasers' titles were held good where they were free from fraud and took from a registered owner, with ex parte Davy, 6 NZLR 760 (CA 1888); Gibbs v. Messer, [1891] AC 248 (PC Vict); Attorney-General v. Odell, 2 Ch 47 (CA 1906) where the purchasers, who in each case had themselves registered, had taken from one not the registered owner and therefore had their titles defeated, and in the last case, was denied indemnification from the Registrar.

On this basis the leading Illinois case, Eliason v. Wilborn, supra, is distinguishable from the instant case. There a forger had procured the owners' duplicate certificate of title from the owners and had himself registered and then conveyed to a bona fide purchaser who filed for registration. The purchaser's title was upheld, since he was protected by Sections 84 and 86, forgery being deemed a species of fraud.

It appears to us that an owner's title could not be defeated when the owner, as in the instant case, was without fault, had no connection with and knew nothing about the fraudulent transactions leading to subsequent registration. There is language in Eliason v. Wilborn, supra, to the contrary, the theory being that one voluntarily submits to the provisions of the act through registration. However, emphasis both in the

30

Illinois and in the United States Supreme Court decisions affirming the decision in the Eliason case, is given to the part the original owner played in making possible subsequent fraudulent transactions. Similar action played a part in the Commonwealth cases. However, Avondale's claim to Marlene Schroeder's interest fails on yet another ground. When the conveying party is guilty of fraud, the protection granted in Section 84 applies only to a registered owner who has purchased his interest in good faith.

■ ■ The notary in the instant case was an employee of Avondale. She took the acknowledgment of the mortgages and notes from Charles Schroeder and Marlene Schroeder's impersonator. In so doing, she did not follow the requirements imposed on her by law. She testified that in the course of her employment she notarized fifty or sixty documents a month, did not know the people brought in by attorneys, and ninety-five percent of the time had never met them before. She had never before seen the persons representing themselves as Mr. and Mrs. Schroeder, and at the time of acknowledgment of the second mortgage and note did not recognize them as the persons who had acknowledged the first some six months earlier. In her words, "It is pretty hard . . . you don't study the faces. I just witness the signatures, that is all I am interested in." Nevertheless, her certification on each instrument states that the persons were personally known to her. A certification must set out the means by which the acknowledgment is taken. Shephard v. Carriel, 19 Ill 312. Only two means are allowed by statute. One, where the person making the acknowledgment is personally known to the officer to be the real person who and in whose name the acknowledgment is proposed to be made, and the other, where he is proved to be such by a credible witness. Ill Rev Stats, c 30, § 23 (1961). The purpose of these requirements is to prevent one person from imperson-

ating another. Doe ex dem. Wiley v. Bean, 6 Ill 302; Doe ex dem. McConnel v. Reed, 3 Ill 371. It is evident that this purpose was not accomplished in the instant case because the statutory requirements were not observed.

■■ The law requires that the officer be personally acquainted with the grantor or have his identity proven before he can act. It is the identity of the grantor, and not the person who merely signs a deed, which must be established. Lyon v. Kain, 36 Ill 362. A certification that the named grantor is personally known to the officer, when this is not the truth, constitutes actionable negligence. People ex rel. Munson v. Bartels, 138 Ill 322, 27 NE 1091.

We note these matters so that the action of Avondale's employee can be seen in proper perspective. We are well aware that in routine procedure, notaries make little or no effort to identify a person whose oath they take or whose signature they attest. But the acknowledgment of a grantor or spouse to a deed or document relating to the transfer of real estate is by statute made an act of more than ordinary significance. Here, any competent person dealing in such matters should understand the requirements and if he does not comply with them must expect to be held responsible. The acknowledgment involved purported to be that of a wife joining her husband in the establishment of a sizeable encumbrance on their property. He needed his wife's co-operation to realize a loan of any substantial size.

■■ The failure of a notary, who is the mortgagee's employee and used by it to take the acknowledgment of a document, properly to identify the person whose acknowledgment is taken, is chargeable to the mortgagee. The most that can be said for Avondale is that the notary was introduced to the "Schroeders" by one of their officers who knew Charles Schroeder slightly and Marlene not at all. Such an

32

introduction could not satisfy her duty. A requirement of personal knowledge cannot be met by introduction just prior to the acknowledgment. See Anderson v. Aronsohn, 181 Cal 294, 184 P 12 (1919); Annot, 10 ALR 871 (1921); cf. People ex rel. Munson v. Bartels, supra. The circumstances by which Avondale took a transfer from an impersonator and arranged the acknowledgment indicate neither a desire to conform to the dictates of the statute nor to the practical requisites of the transaction. It was not compliance with the requisite of good faith. One who is not in such compliance cannot perfect his interest by having it registered. See Prassas v. Jana, 4 Ill App2d 385, 124 NE2d 643.

 The alternative relief sought by Avondale is indemnification by Cook County. Section 138 provides a right of action for damages sustained through any omission, mistake or misfeasance by the Registrar or his agents in the performance of their respective duties. Ill Rev Stats, c 30, § 138 (1961). An indemnity fund is provided from which such claims are to be satisfied. (§ 139.) This fund is made up of fees paid by each person who has a title registered, equal to one-tenth of one percent of the value of the land. (§ 136.) The fees which go to the indemnity fund are separated from others that go to the Registrar.

The fund thus derived from those who register is in the nature of insurance against loss in instances covered by the Act which include the one before us. It is true that Avondale's own actions played a part in making possible its loss, but Section 138 speaks of loss suffered through the Registrar's mistake and does not provide for the tempering of the consequences of such mistake by the mistake of another.

The forgeries in the instant case should have been discovered and Avondale's loss avoided by a proper check by the Registrar's agent of the signatures on

33

the documents with those on the signature cards in the possession of the Registrar at the time of the registration of the $12,000 mortgage. Furthermore, examination of the record discloses that among those documents there are marked variances in the forged signatures of Marlene Schroeder. The discrepancies in handwriting are palpable, and her name is written in varying forms, viz: Marlene V. Schroeder, Marlene Hoffman Schroeder and Marlene V. Hoffman Schroeder. Failure to take notice of such flaws in the documents themselves, as well as by comparison of the forgeries with the signature cards, makes the Registrar liable to Avondale for the loss it here sustained.

The decree is affirmed insofar as it relates to Avondale's claim for lien on Marlene Schroeder's interest, and it is reversed insofar as it relates to the liability of Cook County to indemnify Avondale. The cause is remanded with directions to amend the decree so as to direct Cook County to pay Avondale Savings and Loan Association for the loss it has sustained, as provided by the Torrens Act, and for such other and further proceedings as are not inconsistent with the views herein expressed.

Decree affirmed in part and reversed in part and cause remanded with directions.

McCORMICK, P. J. and DEMPSEY, J., concur.

SUPPLEMENTAL OPINION FILED ON RECONSIDERATION
AFTER ALLOWANCE OF PETITION FOR REHEARING

 In its petition for rehearing, defendant County of Cook renewed its argument that the contributory negligence of the mortgagee Avondale Savings and Loan Association (Avondale) bars it from recovering its loss out of the indemnity fund. Defendant cited a case not previously cited, Miller v.

34

Davy, 7 NZ Law Rep 515. That case does so hold. It was decided in 1889. The question is whether we should follow that decision and adopt a doctrine in the instant case similar to that of contributory negligence used in negligence cases. While the Commonwealth nations were pioneers in that field and their decisions therefore are persuasive, we do not consider an 1889 New Zealand decision conclusive. The opinion in that case is not convincing. In our country the doctrine of contributory negligence has been confined to personal injury cases and even there it has been under severe criticism. To apply the doctrine in the instant case would be illogical and not in the interests of justice. As we pointed out in our opinion, the indemnity fund is in the nature of insurance against mistakes of the registrar and the premium is paid by the applicant for Torrens title. We regard this in the nature of a contractual liability. A purchaser does not contribute to the fund upon registration of an interest taken by purchase, but he is essentially a third party beneficiary to the insurance contract. To import into this type of transaction the doctrine of contributory negligence, whereby gross errors of a registrar might be completely cancelled out by some slight mistake on the part of an insured, could discredit the whole system and destroy it as an effective means of assuring titles in this county. The registrar has made the mistake and has a fund to pay for it.

 Defendant County of Cook also contends that Avondale should not be allowed indemnification because it was not barred by the provisions of the act from bringing an action for recovery of its interest in the land, but rather, as we interpret its argument, that Avondale was barred by general principles of law. It should be borne in mind that Avondale in its counterclaim sought to foreclose the mortgage and alternatively, if foreclosure was denied, it sought re-

covery out of the indemnity fund. Foreclosure was denied as to one-half the property and Avondale seeks to recover out of the indemnity fund the damages thereby sustained.

Defendant County bases its argument on Section 101 of the Torrens Act, Ill Rev Stats, ch 30, § 138 (1961). This provides in part as follows: "(1) Any person sustaining loss or damage through any *omission, mistake or misfeasance of the registrar* . . . (2) *and* any person wrongfully deprived of any land or any interest therein, *through the bringing of the same under the provisions of this act, or by the registration of any other person as owner of such land,* or . . . [other enumerated reasons] and who by the provisions of this act is barred or in any way precluded from bringing an action for the recovery of such land or interest therein, or claim upon the same, shall have a right of action for the damages thus sustained. . . ." (Parentheses, numerals and emphasis ours.)

■■■ As can be seen, this section creates two classes of persons for whom indemnification is provided. Class (1) makes no reference to any interest in land, but applies to one whose interest may have been previously defeated or to one who had never achieved ownership, but whose loss was suffered because of the registrar's omission, mistake or misfeasance. The second class, on the other hand, does cover persons wrongfully deprived of any interest in land and lists numerous conditions, some of which do not have the absolute requirement of mistake, omission or misfeasance on the part of the registrar. The condition stating that the person shall be one who is barred or precluded from bringing an action for the recovery of such land or interest therein is thus definitely related to the second class of persons and not to the first. If we were to apply the language of the condition literally, it would mean that the indemnity clause would apply only to those who by reason of

some disqualification were not entitled to bring suit. This, of course, would be an absurd construction. There are circumstances under which a mistake is made but, as in the instant case, no successful action can be brought to recover the interest in the land. This is such a case and it comes within the provisions of class (1).

The decree is affirmed insofar as it relates to Avondale's claim for lien on Marlene Schroeder's interest, and it is reversed insofar as it relates to the liability of the County of Cook to indemnify Avondale. The cause is remanded with directions to amend the decree so as to direct the County of Cook to pay Avondale for the loss it has sustained, as provided by the Torrens Act, and for such other and further proceedings as are not inconsistent with the views herein expressed.

Decree affirmed in part and reversed in part and cause remanded with directions.

DEMPSEY, P. J. and McCORMICK, J., concur.