MICHAEL NOEL GAFFNEY *et al.*, Plaintiffs-Appellants, v. THE COUNTY OF COOK *et al.*, Defendants-Appellees.

First District (4th Division)   No. 86—0698

Opinion filed April 9, 1987.

Anthony J. Ventrella, of Oak Lawn, for appellants.

Richard M. Daley, State's Attorney, of Chicago (Joan S. Cherry, Susan Condon, and Patricia M. Moser, Assistant State's Attorneys, of counsel), for appellees.

JUSTICE JOHNSON delivered the opinion of the court:

Plaintiffs, Michael and Kathleen Gaffney, conveyed property that was registered under the Torrens system. Prior to the conveyance, the registrar of titles issued to plaintiffs an incorrect tax and special assessment search. Plaintiffs filed a claim against defendants, the registrar of titles of Cook County and the county itself, seeking indemnity pursuant to sections 101 and 102 of "An Act concerning land titles" (the Torrens Act) (Ill. Rev. Stat. 1983, ch. 30, pars. 138, 139). Plaintiffs alleged that they incurred various costs due to the incorrect tax search.

Following a hearing, the registrar denied plaintiffs' claim. On administrative review, the circuit court of Cook County upheld the dismissal. Plaintiffs appeal, contending that (1) they, as grantors of property registered under the Torrens system, are eligible to bring a claim for damages against the registrar, and (2) the registrar is liable for damages caused by the issuance of an incorrect tax and special assessment search.

We reverse.

The record shows that on October 13, 1983, plaintiffs had contracted to sell their property, vacant land located on the northwest corner of 103rd Street and Kenton Avenue, in Oak Lawn, Illinois. On that date, the certificate of title for plaintiffs' property showed that the property was under the following encumbrances: (1) 1978 Cook County real estate taxes, lien for taxes bought by the Interstate Bond Company; (2) 1979 Cook County real estate taxes, lien for taxes bought by the Phoenix Bond and Indemnity Company; (3) 1980 Cook County real estate taxes, forfeited; (4) 1981 Cook County real estate taxes, second installment not paid; and (5) two unidentified Federal tax liens.

Plaintiffs ordered a tax search of their property from the Torrens office, as authorized by section 40 of the Torrens Act (Ill. Rev. Stat. 1983, ch. 30, par. 84), on October 13, 1983. The tax search revealed that only the first and second installments of the 1982 real estate taxes

were unpaid. The search did not disclose that the 1979 real estate taxes were unpaid and that the Phoenix Bond and Indemnity Company bought the lien for the unpaid 1979 taxes on November 19, 1981. Phoenix Bond subsequently petitioned for a tax deed and, on November 22, 1983, sold its interest in the property to the DeBois Investment Group.

On December 20, 1983, plaintiffs conveyed their land into a trust. Michael Gaffney was one of several beneficiaries; the other beneficiaries paid plaintiffs for a two-thirds interest in the property, with Michael receiving a one-third interest.

On January 11, 1984, the trial court ordered the county clerk to issue a tax deed to the DeBois Investment Group. After learning of the tax deed, plaintiffs sought to regain the property. After negotiations, plaintiffs paid DeBois $53,000 for the property and replaced it in the trust. Plaintiffs incurred the following additional expenses: $2,458 in attorney fees for negotiating and closing the repurchase, $533 for title insurance, and $250 for an appraisal. Plaintiffs' expenses totalled $56,241.

The record further shows that on November 19, 1984, plaintiffs filed with defendants a claim for damages, based on the incorrect tax search, pursuant to section 101 of the Torrens Act (Ill. Rev. Stat. 1983, ch. 30, par. 138). They sought the $56,241 that they spent to repurchase the property. Defendants failed to grant or deny plaintiffs' claim within 60 days of the filing date. The Torrens Act, therefore, deemed their claims denied and allowed plaintiffs administrative review in the trial court. (Ill. Rev. Stat. 1983, ch. 30, par. 139.) Plaintiffs filed their complaint for administrative review in the trial court on January 30, 1985. On November 8, 1985, the trial court remanded the cause to the registrar of titles, with the directions that he hold a hearing on the claim and present his findings and conclusions to the court.

On remand, the registrar of titles appointed a panel that held a hearing on October 8, 1985, and October 24, 1985. The panel's findings of fact and administrative ruling were filed with the trial court on December 4, 1985. The panel addressed the sole issue of whether the registrar made an omission or mistake in issuing the tax search.

The panel agreed with plaintiffs that the tax search did not disclose that the 1979 real estate taxes were unpaid and that Phoenix Bond bought the lien for the unpaid taxes. The panel found, however, that the incorrect tax search was not an omission or mistake. The panel found that certain language on the face of the tax search was, in effect, a disclaimer of its accuracy. Consequently, the panel found that the tax search notified reasonable persons that the document was not final and authoritative regarding taxes and assessments; persons interested in

such information should refer to the certificate of title.

The trial court upheld the registrar's decision on February 18, 1986. In its order, the trial court found that (1) the registrar's decision was not against the manifest weight of the evidence, and (2) the registrar had no duty under section 40 of the Torrens Act (Ill. Rev. Stat. 1983, ch. 30, par. 84) to disclose, through the tax search, the existence of tax sales that had occurred more than one year before the search. Plaintiffs appeal.

## I

■ Courts consider the findings of an administrative agency *prima facie* correct and will not disturb them on review unless against the manifest weight of the evidence. In order for a court to find an agency decision against the manifest weight of the evidence, an opposite conclusion from that evidence must be clearly evident. However, where the parties do not dispute the facts, the legal effect of the evidence may create a matter of law for the court's determination. *Division-Kostner Currency Exchange, Inc. v. Montgomery* (1974), 18 Ill. App. 3d 225, 228, 309 N.E.2d 614, 617.

## A

In the instant case, all parties agree that the tax search did not disclose the existence of the 1979 tax lien or its purchase by Phoenix Bond. The registrar's panel ruled that the search, however, was not a mistake or omission because of disclaimers on the face of the search. The trial court found that the registrar had no duty under the Torrens Act to include in the tax search tax sales more than one year old.

■ Courts have described the general purposes of the Torrens system of registration of land titles in various ways for many years. One purpose was to provide an independent system of registration whereby an intending buyer of land could determine from the register the condition of the title and in whom title is vested. (*In re Bickel* (1922), 301 Ill. 484, 491-92, 134 N.E. 76, 79-80.) Another purpose was to create a system of land title registration where all instruments affecting any title should be filed and registered in the office of the registrar and at no other place. (301 Ill. 484, 491, 134 N.E. 76, 79-80, citing *Hacken v. Isenberg* (1919), 288 Ill. 589, 599, 124 N.E. 306, 310.) Further, courts strictly construe the Torrens Act since it provides for both a system of land title registration and remedies that were unknown at common law. *Kreis v. Olsen* (1982), 111 Ill. App. 3d 47, 50, 443 N.E.2d 752, 755.

Section 40 of the Torrens Act provides in pertinent part:

"Section 40. At the time of and as of the date of issuing any

certificate of title or of the entry upon the register of titles of any memorial relating to registered property, the Registrar of Titles shall search for and enter upon the proper page of the register of titles memorials as to the following matters:

(a) Unpaid general taxes, special taxes or special assessments and unredeemed forfeitures for the non-payment thereof.

(b) \*\*\*

If the Registrar's search shall disclose that a sale of the land for any tax or special assessment has been had, and the period for presentation of the certificate of sale to the Registrar of Titles \*\*\* has not elapsed [1 year], such certificate of title shall not be issued or transfer made or memorial entered until proof of the proper deposit for redemption or of the cancellation of such sale has been made to the Registrar of Titles, or until the Registrar of Titles has entered a memorial of such sale upon the register of titles \*\*\*. \*\*\*

Upon application *by any person* to the Registrar of Titles and the payment of the charges herein stated, the Registrar shall search for and report in writing to the applicant as to (a) unpaid taxes, special assessments and forfeitures or (b) liens for internal revenue taxes against the registered owner of the land described in the certificate of title, holder of any legal interest as disclosed by the certificate and the registered owner's indicated and intended grantees or assignees." (Emphasis added.) Ill. Rev. Stat. 1983, ch. 30, par. 84.

■ Applying the above principles to the instant case, we conclude that the registrar breached his duty to plaintiffs under section 40 of the Torrens Act. We first reject the registrar's finding that the incorrect tax search was not an omission or mistake because of a disclaimer on the face of the document. The statute imposes on the registrar the duty to make tax searches upon request. We assume that the legislature intended these tax searches to be correct and accurate. Nothing in the statute indicates that the registrar can remove himself from this duty by way of a disclaimer.

The trial court held that the registrar had no duty under section 40 of the Torrens Act to include in the tax search the existence of tax sales that had occurred more than one year before the search. We believe that the trial court misread the statute. Defendants point to section 82 of the Act, which provides that the holder of a certificate of sale for any tax sale has one year to present the certificate to the Registrar for his entry of a memorial in the register. (Ill. Rev. Stat. 1983, ch. 30, par. 119.) Defendants argue that the registrar, therefore, need include

in a tax search only those tax sales less than one year old since tax sales over one year old must be memorialized in the register.

Nothing in the plain language of the pertinent part of section 40 of the Torrens Act limits the registrar's tax search to tax sales less than one year old. The second paragraph of section 40(b) does refer to the one-year limitation on filing with the registrar certificates of sale. That paragraph, however, describes when the registrar may withhold issuing a certificate of title or entering a memorial in the register relating to a registered property.

Before issuing a certificate of title or entering a memorial, the registrar makes a mandatory tax search. If the registrar's search discloses a tax sale, and the one-year period for presentment of the certificate of sale from the tax sale has not elapsed, then it is not clear who has title. Consequently, section 40 of the Torrens Act forbids the registrar from entering any memorial in the register until the unpaid tax or assessment is cancelled or redeemed or the certificate of sale is presented to the registrar for entry in the register within the one-year period. Ill. Rev. Stat. 1983, ch. 30, par. 84.

■ This procedure is, of course, completely different from the non-mandatory tax search that the registrar makes only on request, for which section 40 provides in the subsequent paragraph. That paragraph says nothing about a one-year limit for tax sales that the registrar should include in the tax search. That paragraph says simply that the registrar "shall search for and report in writing to the applicant" unpaid taxes, special assessments, forfeitures, and internal revenue tax liens. (Ill. Rev. Stat. 1983, ch. 30, par. 84.) Defendants and the trial court confused these two separate and different provisions. We hold, therefore, that the registrar had a duty under section 40 of the Torrens Act to include the 1979 tax sale in his tax search for plaintiffs.

B

■ Defendants next contend that plaintiffs are not the proper parties to file a claim under sections 101 and 102 of the Torrens Act (Ill. Rev. Stat. 1983, ch. 30, pars. 138, 139). Referring to the previously cited general purposes of the Torrens system, defendants argue that the Act protects only intending purchasers of land by allowing them to determine from the register the condition of title and in whom title is vested. Since plaintiffs were sellers rather than buyers, defendants argue that plaintiffs cannot seek damages under the statute.

Defendants' argument lacks merit. Defendants overlook the other previously mentioned purpose of the Torrens Act: to create a system of land title registration where all instruments affecting any title would

be filed and registered in the office of the registrar and at no other place. (*Hacken v. Isenberg* (1919), 288 Ill. 589, 599, 124 N.E. 306, 310.) This goal applies to all interested persons, including plaintiffs.

The Torrens Act itself expressly allows plaintiffs to file a claim for damages. Section 40 of the Act explicitly states that "any person" may apply to the registrar for a tax search. (Ill. Rev. Stat. 1983, ch. 30, par. 84.) Further, section 101 of the Act states that "*[a]ny person* sustaining loss or damage through any omission, mistake or misfeasance of the registrar *** shall have a right of action for the damages thus sustained against the county in which such land shall be registered." (Emphasis added.) (Ill. Rev. Stat. 1983, ch. 30, par. 138.) We hold, therefore, that plaintiffs can properly file a claim for damages under sections 101 and 102 of the Torrens Act. Since we previously held that the registrar breached his duty under section 40 of the Act, we further conclude that he breached his duty to plaintiffs.

## C

■ The last issue that we must address is the amount of damages that plaintiffs should receive. Plaintiffs seek as damages the total amount of their expenses in repurchasing the property. Defendants argue that plaintiffs should receive only one-third of their total expenses since Michael Gaffney had only a one-third interest in the property on the date that the tax deed issued to the DeBois Investment Group.

We reject defendants' argument. The registrar's mistake that gave rise to plaintiffs' claim occurred on October 13, 1983. On that date, plaintiffs still owned the property; they did not convey the property into the trust until December 20, 1983. Further, the registrar's panel found that none of the other beneficiaries to the trust contributed any money for the repurchase. Referring to the registrar's statutory indemnity fund, from which the county pays claims filed under section 101 of the Torrens Act (Ill. Rev. Stat. 1983, ch. 30, par. 139), this court has stated, "[t]he registrar has made the mistake and has a fund to pay for it." *Hoffman v. Schroeder* (1962), 38 Ill. App. 2d 20, 35, 186 N.E.2d 381, 389.

Neither the registrar's panel nor the trial court addressed specifically the issue of damages since each found that the registrar was not liable. The registrar's panel did find, however, that plaintiffs spent $53,000 for the property's repurchase. Additionally, the record contains evidence that plaintiffs spent $2,458 for attorney fees, $533 for title insurance, and $250 for an appraisal; plaintiffs' expenses totalled $56,241.

■ Because the amount of damages is definite and ascertainable

from the record, there is no need to remand the cause to the trial court for a determination. Accordingly, we enter judgment here for plaintiffs in the amount of $56,241. 87 Ill. 2d R. 366(a)(5); see, *e.g., Ginsburg v. Prudential Insurance Co. of America* (1938), 294 Ill. App. 324, 341, 13 N.E.2d 792, 798.

For the foregoing reasons, the judgment of the circuit court of Cook County, which upheld the decision of the registrar of titles, is reversed, with judgment entered here for plaintiffs in the amount of $56,241.

Reversed, with judgment here.

JIGANTI and LINN, JJ., concur.